**UNITED STATES of America**

v.

**Arthur R. MAYR, Jr. and Carl L. Windham.**

**Cr. No. 72–502.**

United States District Court,
S. D. Florida,
Miami Division.

Nov. 16, 1972.

Robert W. Rust, U. S. Atty., and Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for the United States.

William A. Meadows, Jr., Heiman & Crary, Miami, Fla., for defendant Arthur R. Mayr, Jr.

Robert J. Randolph, Stuart, Fla., for defendant Carl L. Windham.

## ORDER DENYING POST TRIAL MOTIONS

ATKINS, District Judge.

This cause is before the Court on defendant Mayr's motions for new trial and for judgment of acquittal and defendant Windham's motion for directed verdict of acquittal or alternatively for a new trial. These motions and the memoranda submitted in support of them have received careful consideration from the court. The defendants, Arthur Mayr, President of the First Bank of Indiantown, and Richard Windham, a holder of corporate accounts in that bank, were convicted, following a jury trial, of conspiracy to misapply bank funds and to make false entries on the bank's books in violation of 18 U.S.C. § 371.

Defendant Mayr's first assertion of error is the denial of his motion to dismiss or elect. This contention has been rejected previously. Apart from the absence of any authority for the position that one cannot be charged as both an aider and abettor and a conspirator, this argument was mooted when the government did not proceed on an aid and abet theory. No charge on 18 U.S.C. § 2 was given to the jury. The fact that the indictment charges the defendants with conspiring to violate both § 656 and § 1005 does not render it defective. Finally, the sufficiency of the indictment, tracking the statutory language, is apparent. United States v. Bearden, 423 F.2d 805, 810 (5th Cir. 1970), cert. denied, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed. 2d 68 (1970).

The second contention is that the Court erred in denying defendant Mayr's motion to waive jury, despite the fact that the government did not consent to the waiver as required by Rule 23(a), F.R.Crim.P. This argument is also without merit. A defendant has no constitutional right to a non-jury trial. In Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed. 630 (1965), an unanimous Supreme Court upheld the constitutionality of the government consent requirement of Rule 23(a). *Accord*, United States v. Bowles, 428 F.2d 592 (2d Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970). There is neither allegation nor evidence of bad faith on the government's part in refusing to consent, although *Singer* implied that such conduct might obviate the need for government consent. Allegations of the complexity of the subject matter of a case do not, without more, entitle a defendant to a non-jury trial over the government's objection. United States v. Simon, 425 F.2d 796, 799, n. 1 (2d Cir. 1969), cert. denied, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). While this case did involve some novel legal issues, they were basically uncomplicated. The difficult question, undoubtedly well within the province of the jury, was that of determining whether the defendants possessed the requisite criminal intent.

Mayr's contention that his motion to sever was improperly denied, even if appropriate at this time, is erroneous. Although denial of that motion might conceivably have deprived Mayr of his opportunity to call the co-defendant Windham as a witness on his behalf, the averments of the motion were, as noted in the Court's September 26, 1972 order, clearly insufficient. There was no evidence either that Windham would have testified on Mayr's behalf or that any testimony would have been exculpatory. The affidavit recently filed by Mayr's counsel, apparently in support of the proposition that Windham could have offered exculpatory testimony, is untimely.

The admissibility of certain items is challenged by both defendants. These include the $57,000 and $31,000 checks drawn on the Royal Bank of Canada and left with the defendant Mayr to be used to cover the Windham account overdrafts in the event the bank examiners visited the bank, photocopies of those checks shown to Mayr by an FBI agent for his identification, and deposit slips in the amounts of $57,000 and $31,000, admittedly used by Mayr to deposit the above-mentioned checks.

Defendants assert that these exhibits were never connected up, that Windham's signatures on the two large checks were never authenticated, and that a proper predicate was never laid for their admission. The checks were introduced and admitted subject to motion to strike if not connected up, at defense counsel's insistence, at an early stage in the government's case. The record is replete with evidence of the relevancy and connection of these checks and the deposit slips to the allegations of the indictment. Indeed, all parties appear to concede that they were crucial to the case. Agent Eason recounted Mayr's statements as to filling out and depositing the checks and deposit slips. Agent Parsons testified

as to Windham's admission that he had left two checks drawn on the Royal Bank of Canada with bank officials in case they were needed for his account. In light of all the evidence, these exhibits were properly admitted.

■ The objection of the defendant Mayr to the admission of Mr. Post's testimony about instructions to Mayr concerning overdrafts on the Windham accounts and about board of directors' resolutions not to extend further credit to Mr. Windham is not well-taken. This area was opened up by defense counsel in his cross-examination of Mr. McKinney, a bank officer:

"Q. Now, based upon your experience in banking, is it common practice in banking to allow certain customers to overdraw their accounts?

A. That is true." (T 80)

The court overruled a prosecution objection to the relevancy of the inquiry. During his cross-examination of Mr. Post, defense counsel again asked about the bank's overdraft policies on other accounts. Government exploration of this area did not begin until redirect examination of Mr. Post. Certainly bank policy on the specific accounts involved in these criminal charges was relevant. This relevancy far outweighed any prejudice to the defendants.

Other grounds raised by defendant Mayr are covered in his motion for judgment of acquittal. Basically his argument is that the evidence did not support the verdict and that no crime was proven, since there was no loss to the bank—no conversion of bank funds.

The facts established by the evidence, virtually agreed upon, are sufficient to show the conspiracy charged. The loss to the bank is obvious and real—the misapplication of its funds in "converting [the bank's] credit to the use of the defendant without interest or security." Benchwick v. United States, 297 F.2d 330, 334 (9th Cir. 1961). *Cf.* Hall v. United States, 286 F.2d 676, 680 (5th Cir. 1960), cert. denied, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961). In effect the transactions in question amount to unauthorized, non-interest bearing loans to the defendant Windham.

■ As the jury was instructed, evidence of overdrafts alone does not permit conviction for the offenses charged. Here, however, the continuing grossly excessive overdrafts were accompanied by concealment of the overdraft status when the examiners entered the bank. Although the injury to the bank had already occurred, the drawing and depositing of the January 4, 1972 checks was an affirmative act of concealment designed to perpetuate the injury to the bank, i. e., to continue the unauthorized loans. This was sufficient to take the conspiracy count to the jury.

The evidence against the defendants brings the case within the ambit of Benchwick v. United States, *supra*, and Swingle v. United States, 389 F.2d 220 (10th Cir.), cert. denied 392 U.S. 928, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968). Unlike *Swingle*, there was no evidence of concealment, prior to the examiners' visit. This absence of concealment was relied on by defense counsel in his final argument. The concealment that did occur, however, crediting the $88,000 to the Windham accounts despite knowledge of Windham's admission that the checks would probably be returned for insufficient funds, provided the additional element upon which the jury could reasonably base a finding of criminal intent.

■ Mayr's final argument, that the not guilty verdict on Counts IV through X vitiates the conspiracy conviction, must also be rejected. Those counts dealt with specific small overdrafts on the Windham accounts. Counts II and III, which concerned the false entry of the $57,000 and $31,000 checks, were dismissed prior to trial. Thus the jury verdict on IV through X does not represent its determination on the bearing of the two large deposits on the question

of Count I guilt or innocence. There is no inconsistency in the jury verdicts.

■ The defendant Windham, aside from joining in the above motions, makes several additional challenges. First he argues, without specifying his objection, that the jury was erroneously instructed as to conviction of co-conspirators. The Court initially defined a conspiracy as "a combination of two or more persons . . ." and charged, as one essential element of the conspiracy offense, "that two or more persons conspired to commit an offense . . . ." It was, after these definitions, deemed unnecessary to instruct the jury, as defendant Windham requested, that the jury could not find one defendant not guilty and the other guilty as to Count I. Later, however, when the jury asked that precise question, it was told that it could not convict one defendant and not the other of conspiracy. The definition of conspiracy was repeated at that time. These charges were not erroneous.

■ It is also contended that the admission of Mayr's statements constituted error. This argument is without merit. The *Bruton* problem inherent in this situation was obviated when the defendant making the statement took the stand and was available for cross-examination. In any event the Court, perhaps with an overabundance of caution in view of Mayr's testimony and availability for cross-examination, deleted all references to the defendant Windham. *See, e. g.,* United States v. Gray, 462 F.2d 164 (5th Cir. 1972); United States v. Sims, 434 F.2d 258 (5th Cir. 1970).

■ Windham also challenges the admission of certain evidence, admissible against the defendant Mayr but not against defendant Windham, made outside his presence. The subject conversations, of Mayr with Messrs. Post and McKinney, were admitted subject to a cautionary instruction to the jury. Any

*Bruton* problem was cured when Mayr took the stand. He was then subject to examination by Windham about his conversations with Post, his conversations with Windham, and his statement to Agent Eason. There was no such cross-examination. Considering the availability of Mayr for cross examination and the limiting instructions, Windham's objections to this testimony are groundless.

■ His final objection is to the admission of the checks used to attempt to prove Counts IV through X. Although admissible only against Mayr, since only he was charged in those counts, all the checks bore the purported signature of the defendant Windham. This documentary evidence was properly admitted. Defense counsel requested a cautionary instruction as to the check involved in Count I and it was given. A second broad cautionary instruction as to the other checks was given shortly thereafter. At the conclusion of the trial, the Court again emphasized that "Each defendant is entitled to have his guilt or innocence as to each of the crimes charged determined from his own conduct and from the evidence which applies to him as if he were being tried alone."

> "Whenever there is more than one defendant standing trial at the same time, it is inevitable that there will be introduced evidence which does not affect all the defendants. While there are situations in which this could prejudice the defendants not affected by the evidence, here the jury was carefully instructed and no prejudice against the defendant occurred."

United States v. Martinez, 428 F.2d 86, 89 (6th Cir.) cert. denied 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (1970).

Accordingly, it is ordered and adjudged that defendants' motions for new trial and for judgment of acquittal are denied.