**UNITED STATES of America**
**v.**
**John Robert KERNODLE and Norman Graham Smith.**

**UNITED STATES of America**
**v.**
**John Robert KERNODLE et al.**

**UNITED STATES of America**
**v.**
**Houston P. SHARPE et al.**
**Nos. Cr.–279–G–73 to Cr.–281–G–73.**

United States District Court,
M. D. North Carolina,
Greensboro Division.
Oct. 12, 1973.

William L. Osteen, U. S. Atty., Greensboro, N. C., for plaintiff.

Jack W. Floyd, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for H. Calloway Pollard, Jr.

John R. Jordan, Jr., Jordan, Morris & Hoke, Raleigh, N. C., and Allen A. Bailey, Charlotte, N. C., for John Robert Kernodle.

Fred Darlington, III, Graham, N. C., for Norman Graham Smith.

David W. Long, Raleigh, N. C., for Marshall Stewart, Jr.

Louis C. Allen, Jr., Allen, Allen & Bateman, Burlington, N. C., for Houston P. Sharpe and Charles M. McMillan.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

The three above-entitled cases charge various officers and directors of the North State Bank of Burlington, North Carolina, and defendant McMillan with willfully misapplying bank monies, funds, and credits. Each indictment charges defendants in Count One of their respective indictments with conspiracy. The remaining counts charge a violation of 18 U.S.C. § 656 and 18 U.S. C. § 2. In addition, the indictment in Cr–281–G–73 charges those defendants with making a false financial statement in violation of 18 U.S.C. § 1014. All defendants are charged in each count of their respective indictments.

Prior to arraignment on October 5, 1973, these defendants filed various motions attacking the indictments and requesting severance. The Court initially denied those motions for reasons as set out in this memorandum order.

Due to the similarity of some of the contentions raised in these three cases, the Court has decided to deal with all of the motions in this order. Generally, all defendants attack the sufficiency of both the conspiracy and substantive counts of the indictments. They also challenge the grand jury proceedings which issued the indictments. Some defendants have also moved for a severance.

## I

### *Sufficiency of the Indictment Relating to the Counts Charging a Violation of 18 U.S.C. § 656*

Each of the indictments charges the defendants with violation of 18 U.S.C. § 656 in that they allegedly willfully misapplied bank funds. In Cr–279–G–73 Counts Two through Eleven contain those charges.[1]

In Cr–280–G–73, Counts Two through Nineteen allege violation of 18 U.S.C. § 656. Counts Two through Ten of that indictment charge defendants with causing checks to be paid from an insufficient funds account.[2] Counts Eleven through Nineteen allege a misapplication by the making of loans.[3] In Cr–281–G–73 the allegations as to 18 U.S.C. § 656 appear in Counts Two through Twenty-Four. Counts Two through Twenty-One charge a misapplication by writing checks on an insufficient funds account, using the same format as Counts Two through Ten in Cr–280–G–73 as set out in footnote 2. Counts Twenty-Two through Twenty-Four of Cr–281–G–73

charge misapplications by the making of loans, using the format of Counts Eleven through Nineteen in Cr–280–G–73 as set out in footnote 3.

Defendants contend that the counts charging a misapplication of bank monies, funds, or credits do not conform to the requirements of Rule 7(c), Federal Rules of Criminal Procedure. As to the counts alleging misapplication through the payment of checks drawn on insufficient funds accounts, they claim that the indictment fails to show that the company on whose account the checks were drawn was insolvent and thus unable to repay the bank. They state that the company may have given security or had some arrangement with the bank for repaying the checks. They state that the indictment must show that the company did not have other accounts in the bank which contained funds. They also say that regulations contained in 12 C.F.R. § 7.1161 permits banks to extend credit through use of overdrafts. In regard to the misapplication charges through use of loans, they claim that the indictment must allege that the loans would and

---

1. Count Two charges, in material part, the defendants "with intent to injure and defraud the said Bank, did wilfully misapply and cause to be misapplied monies, funds, and credits of said Bank in that the defendants did cause Loan Number 9252 to be made by the Bank to Barbara T. Smith, in the amount of $40,000.00, the proceeds of which were deposited in the account of the defendants, concealing the purpose for the loan and concealing the interests of JOHN ROBERT KERNODLE and NORMAN GRAHAM SMITH in the loan, which loan was financially unsound; in violation of 18 U.S.C. 656; 2."
 The remaining counts allege the same type of transaction with only the date, loan number, amount and recipient being different.

2. Count Two charges, in material part, the defendants "with intent to injure and defraud the said Bank, did wilfully misapply and cause to be misapplied the sum of $21,525.65 of the monies of the said Bank, in that the defendants did cause to be paid out of the monies and funds of the said Bank a check in the amount of $21,525.65, dated December 23, 1970, drawn on the account of Ketteridge Industries, Inc., which, as the defendants well knew, did not contain

sufficient funds to cover the said check, whereby the possession, control, and use of said monies and funds of the Bank were converted and misapplied to the use and benefit of Ketteridge Industries, Inc., NORMAN GRAHAM SMITH, H. CALLOWAY POLLARD, JR., and MARSHALL STEWART, JR.: in violation of 18 U.S.C. 656; 2."
 The remaining counts are the same except for dates and amounts.

3. Count Eleven charges, in material part, the defendants "with intent to injure and defraud the said Bank did wilfully misapply and cause to be misapplied monies, funds, and credits of said Bank in that the defendants did cause Loan Number 10012 to be made by the Bank to Ketteridge Industries, Inc., in the amount of $260,000.00, the proceeds of which were deposited in said Bank to the account of Ketteridge Industries, Inc., concealing the purpose for the loan and concealing the interest of H. CALLOWAY POLLARD, JR., NORMAN GRAHAM SMITH and MARSHALL STEWART, JR.; in violation of 18 U.S.C. 656; 2."
 The remaining counts are the same except for different dates, loan numbers, amounts, and recipients.

could not be repaid. They say that the defendants' interest and purpose in the loans must be more specifically stated and the indictment must detail the defendants' involvement in making the loans. They state that the contention of the indictments that they concealed their purpose and interest in the loans does not cure the defect of insufficiency. To summarize, the defendants claim that in an indictment charging misapplication under 18 U.S.C. § 656, the government must detail the facts behind the charge, give particulars as to the involvement of the defendants and explain why the transaction was illegal. They claim that the three indictments merely allege garden variety banking transactions and that the charges that defendants acted with intent to defraud, to conceal their interest, or to convert bank funds and monies merely states a conclusion but does not inform them of the nature of the charges against them.

In support of their contentions, defendants rely upon United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L. Ed. 520 (1883), for the proposition that the term 'willfully misapplied' has no set meaning and, therefore, the indictments must particularize the means whereby the alleged misapplications were accomplished in order to sufficiently inform them of the charges which they face. In addition, they place heavy reliance upon Johnson v. United States, 95 F.2d 813 (4th Cir. 1938), for their contention that an indictment under 18 U.S.C. § 656 must negate any possibility that the banking transaction might be legitimate or that the monies taken or paid out might be repaid at a future date.

In Johnson v. United States, *supra*, the court held that an indictment under what is now 18 U.S.C. § 656 did not charge an offense. The indictment charged in the language of the statute and then went on to explain defendant's actions in detail. The indictment charged that defendant took a note from another individual, discounted it, and credited the funds to his personal checking account which had been overdrawn. The court noted that allegations failed to show a fraud on the bank,[4] or a conversion of bank funds, since the funds were never withdrawn. In effect, the court found that the allegations particularizing the crime merely recounted routine banking transactions.

The Court finds significant differences between the indictments here and those in Johnson v. United States, *supra*. Here, the counts as to checks drawn on insufficient funds accounts in addition claim that the funds were converted. In *Johnson* there was no claim that the note was bad or that the defendant converted the funds. In the present indictments the counts relating to the loans also claim that the defendants concealed the purpose of the loans and their interest in them. In *Johnson* there was no concealment, and in fact there the defendant was quite candid about what he did. The Court also finds significant that here the indictments charge many different misapplications involving large sums of money, whereas in *Johnson,* the alleged misapplication occurred once, and only involved $600.[5] The Court finds that the

---

4. As summarized in United States v. Docherty, 468 F.2d 989, 994 (2nd Cir. 1972) :
 . . . On the other hand, Johnson v. United States, 95 F.2d 813 (4 Cir. 1938) (Soper, J.), held that no crime was charged when the indictment alleged only that a bank president, whose conduct was characterized with a copious array of pejorative adverbs, had discounted a note payable to himself and applied the proceeds to his own account, in order to meet an overdraft. The court found the in-

dictment flawed since there was no allegation that the maker was known to be insolvent or to have an intention not to pay.

5. In United States v. Moraites, *infra*, 3 Cir., 456 F.2d 435, the court said it need not consider whether an indictment charging an offense under 18 U.S.C. § 656 and framed in the language of the statute would be sufficient standing alone, since in that case the first count of the indictment charged an elaborate conspiracy to misapply bank funds, and all defendants were charged in both the

present indictments sufficiently inform defendants of how the alleged misapplication took place and indicate why it was unlawful. The Court cannot read these indictments and come to the conclusion that only an ordinary banking transaction is charged. These indictments allege conversion and concealment as essential ingredients of the transactions.

■■ While the Court holds that the present indictments sufficiently explain the means whereby the misapplications arose, it also holds the indictments sufficient because they follow the language of the statute in charging a crime.[6] The prevailing view today appears to be that it is sufficient to set out an offense under 18 U.S.C. § 656 (for misapplication) by using the language of the statute, and the omission of detailing the means by which the offense was committed does not make the indictment insufficient. United States v. Archambault, 441 F.2d 281, 283 (10th Cir. 1971), cert. denied, 404 U.S. 843, 92 S.Ct. 140, 30 L. Ed.2d 78 (1971); United States v. Bearden, 423 F.2d 805, 810–811 (5th Cir. 1970), cert. denied, 400 U.S. 836, 91 S. Ct. 73, 27 L.Ed.2d 68 (1970); United States v. Fortunato, 402 F.2d 79, 81–82 (2nd Cir. 1968), cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969); and see also United States v. Moraites, 456 F.2d 435, 440–441 (3rd Cir. 1972), cert. denied. Those cases either implicitly or explicitly hold that the term 'willfully misapplied' as used in 18 U.S.C. § 656 is not so vague and indefinite a word so as to necessitate further explanation. (See United States v. Moraites, supra, at 441 n. 9 for citation of authorities that this term as used in 18 U.S.C. § 656 has gained a technical meaning since the decision in United States v. Britton, supra, which was decided in 1883.)

■■ Since the decisions in Britton (1883) and Johnson (1938), Congress has adopted new rules of criminal procedure to replace the old common law rules of pleading. Rule 7(c), Federal Rules of Criminal Procedure, became effective in 1946. As stated in Wright, Federal Practice and Procedure, Vol. 1, § 123 at 219–21 (1969):

Rule 7(c) put an end to "the rules of technical and formalized pleading which had characterized an earlier era." The complex requirements of common law criminal pleading and of some state practices are now obsolete. The precision and detail formerly demanded are no longer required, imperfections of form that are not prejudicial are disregarded, and common sense and reason prevail over technicalities.

The fundamental functions and requirements of an indictment have not been modified, and it is still essential that every element of an offense be stated and that the defendant be given fair notice of the charge against him, but the rule now permits a plain, concise, and definite statement of the essential facts constituting the offense.

The sagacity of Rule 7(c) readily appears in the instant case. An indictment charging a violation of 18 U.S.C. § 656 may indeed involve complex matters of banking law and policy at the trial. To do as defendants suggest and require that all the details of the alleged illegal transaction be explained in detail would result in a reversion to the common law technical form of pleading. To avoid this result, the government necessarily must rely upon conclusory statements, the facts of which must be proved during the trial. The Court·

---

conspicacy and the challenged substantive counts. The same could be said of the three indictments in the present case. In fact, it appears that the indictments in the present case are more informative than those in United States v. Moraites, supra, at 440 n. 7, which the court held sufficient.

6. The essential elements of 18 U.S.C. § 656 in this case are (1) the accused was an officer, director, etc., of a bank; (2) the bank had a particular type of federal connection; (3) the accused willfully misapplied money, etc., of said bank; and (4) the accused acted with intent to injure or defraud the bank.

holds that the term "willfully misapplied" through the years has acquired a specific meaning so as to enable the defendants to be put on notice of the crime for which they are charged and to enable them to prepare their defense.[7] In addition, these three indictments sufficiently explain the transactions to defendants so as to comply with Rule 7(c).

■ In regard to defendants' contentions that the transactions alleged in the indictments can be shown to be legal, it is enough to say that they will have ample opportunity to present their evidence at the trial. To require the government to negate every possible or unusual defense contravenes the purpose of Rule 7(c) and would lead to a mini-trial prior to arraignment in order to determine whether a particular transaction could or might be merely irregular rather than illegal. Such a procedure is neither good policy, nor is it the law. As stated in United States v. Thomas, 144 U.S.App.D.C. 44, 444 F.2d 919, 926 n. 23 (1971):

> As a general rule, it is not required that matters of defense be negated in an indictment or information. Evans v. United States, 153 U.S. 584, 590, 14 S.Ct. 934, 38 L.Ed. 830 (1894); Fippin v. United States, 162 F.2d 128, 131 (9th Cir. 1947); United States v. Branigan, 299 F.Supp. 225, 228 (S.D. N.Y.1969). *See generally* 1 C. Wright, Federal Practice and Procedure § 125 (1969).

See also United States v. Vannatta, 189 F.Supp. 939, 941 (D.Hawaii 1960), which applied the general rule to a case involving 18 U.S.C. § 656.

---

**7.** A misapplication is an unauthorized, unjustifiable, or wrongful use of the bank's monies, funds, or credits. However, the term "willful misapplication" as used in 18 U.S.C. § 656 means a criminal misapplication rather than a mere act of maladministration. In order for there to be a willful misapplication, the defendant must convert to his own use, benefit, or gain, or to some other person's or company's use, benefit, or gain, the monies, funds, or credits of the bank. However, it is not every such unauthorized or unlawful appropriation of monies, funds, or credits which is punishable, but only those

## II

### *Sufficiency of the Indictment in Regard to the Conspiracy Counts*

■ Defendants also challenge the first count of their indictments claiming that it, like the substantive counts, is too vague to inform them of the charges against them. All three indictments in Count One charge defendants with conspiracy to violate 18 U.S.C. § 656. In addition, the indictment in Cr–280–G–73 charges a conspiracy involving the defrauding of the United States of its having its banking regulations administered honestly, as well as involving the misapplying of bank monies, funds, and credits. Each indictment describes the defendant's business relationship or position, the time of the conspiracy, and the part the defendants played in the conspiracy. Also, each indictment alleges several overt acts relating to issuing or cashing checks, and making loans. As said in United States v. Sterkel, 430 F.2d 1262, 1263 (10th Cir. 1970):

> An information [or indictment] charging a conspiracy is sufficient if it follows the statutory language and contains an adequate statement of an overt act to effectuate the object of the conspiracy. . . . The requisite overt acts need not be criminal in themselves.

While the conspiracy count need not allege the misapplication charges as precisely as would be necessary in the substantive counts, (United States v. Grizaffi, 471 F.2d 69, 73 (7th Cir. 1972), the Court finds that the instant indictments are more than adequate in that

acts willfully done with the specific intent to defraud or deceive the bank. *See* United States v. Moraites, *supra,* at 441 and cases cited in footnote 9, and United States v. Docherty, *supra,* 468 F.2d 989 (2nd Cir. 1972). The fact that the bank may suffer no loss or injury, or that there is a future possibility of repayment or benefit to the bank is no defense. The offense is complete immediately upon the act of willful misapplication with intent to defraud or deceive. United States v. Acree, 466 F.2d 1114 (10th Cir. 1972).

regard. The indictments as to conspiracy apprise defendants of the purpose of the conspiracy and of the scheme used to effectuate it. They follow the language of the statute and set out the overt acts used to fulfill the conspiracy's purpose. The indictments comply with Rule 7(c), Federal Rules of Criminal Procedure.

■■ Defendants' complaint in Cr–280–G–73, that the conspiracy count is duplicitous because it alleges two distinct conspiracies, lacks merit also. An agreement to commit several crimes is but one offense even though one or more means are alleged to have been used to complete the conspiracy. United States v. Johnson, 337 F.2d 180, 185 (4th Cir. 1964). It is well settled that it is permissible to charge a conspiracy to commit several crimes, all in one count of an indictment without it being duplicitous. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); United States v. Cooper, 464 F.2d 648, 654 (10th Cir. 1972); United States v. Levine, 457 F.2d 1186, 1189 (10th Cir. 1972); United States v. Addonizio, 451 F.2d 49, 60 (3rd Cir. 1972); Center v. United States, 96 F.2d 127, 130 (4th Cir. 1938); and United States v. Mayr, 350 F.Supp. 1291, 1294 (S.D.Fla.1972)— (conspiracy to violate 18 U.S.C. § 656 and § 1005). Here the two objectives of the conspiracy are neither diverse nor unrelated.

### III

*Sufficiency of Indictment Charging a Violation of 18 U.S.C. § 1014*

In Cr–281–G–73, the twenty-fifth count of the indictment charges that defendants:

. . . did make and cause to be made and delivered a false financial statement . . . for the purpose of influencing the action of the said Bank and the Federal Deposit Insurance Corporation in connection with loans and extensions of credit to A–1 Knits, Inc., in that the said financial statement, dated March 31, 1972, stated the liability to said Bank to be $100,000.00 and the total capital to be $73,625.15, whereas, in truth and in fact, as the defendants well knew, the liability to said Bank was $200,000.00 and the capital account had a deficit of $26,374.85; in violation of 18 U.S. C. 1014; 2.

Defendants challenge the sufficiency of this indictment claiming that it fails to detail the transaction adequately. They say it fails to tell them of the identity of the entity to which the financial statement referred; that it did not tell when the loans were made; that it does not explain whether the bank or the Federal Deposit Insurance Corporation used the financial statement or how they used it. Defendants say that the loan may have been made prior to the submission of the financial statement and thus the bank could not have relied upon the statement. They claim that since the alleged liability was to the bank, there could be no material deception since the bank must know the status of its own borrowers' accounts. Finally, they say that the indictment on its face fails to show a false statement.

■ In viewing the sufficiency of these indictments, the Court has been concerned with two criteria which must be met. First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of the nature of the charges against him so he can prepare his defense. Second, the indictment must be sufficiently specific so as to protect defendant against another prosecution for the same offense. Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240, 250–251 (1962). The Court holds that each count of the three indictments meet these two requirements.

■ The essential elements of 18 U.S.C. § 1014 in the instant case are as follows: (1) the making of a false statement or report upon any application . . . commitment, or loan; (2) knowing the same to be false; (3) for the purpose of influencing in any way the action either of any bank the depos-

its of which are insured by the Federal Deposit Insurance Corporation, or of the Federal Deposit Insurance Corporation. The gist of the offense is the attempt to influence through the delivery or communication of false statements. Reass v. United States, 99 F.2d 752, 755 (4th Cir. 1938). Reliance by the bank or government corporation is neither an element of the offense or a requirement of the government's proof. As the Supreme Court said in United States v. Kay, 303 U.S. 1, 5–6, 58 S.Ct. 468, 471, 82 L.Ed. 607, 611–612 (1938):

. . . It does not lie with one knowingly making false statements with intent to mislead the officials of the Corporation to say that the statements were not influential or the information not important. There can be no question that Congress was entitled to require that the information be given in good faith and not falsely with intent to mislead. Whether or not the Corporation would act favorably on the loan is not a matter which concerns one seeking to deceive by false information.

Any requirement that the statement be material goes to show defendant's intent to influence and mislead; it does not mean that the false statement must be of such a nature that the bank would necessarily rely upon it in taking action. All that is necessary is that the statement have the capacity to influence in order to negate innocent intent. United States v. Goberman, 458 F.2d 226, 229 (3rd Cir. 1972). The government need not show that the bank suffered any loss. United States v. Trexler, 474 F.2d 369, 372 (5th Cir. 1973).

 In the instant case, the indictment sufficiently alleges all of the necessary elements of a crime arising under 18 U.S.C. § 1014. It specifies when the statement was made and it sufficiently describes the statement. The government need not include all of the information which defendants have contended should have been put in the indictment, nor negate all defenses which defendants can imagine.

## IV

*Challenge to the Grand Jury Proceedings for Non-Recordation, Use of Hearsay and Illegal Evidence, and Other Matters*

Defendants challenge the indictments as a whole, alleging improprieties in the grand jury's consideration and return of the indictment. While they complain about the fact that the proceedings were not recorded, they allege no prejudice as a result, nor do they state any particularized need for a transcript. They challenge the alleged exclusive use of hearsay testimony of the investigating F.B.I. agent in charge of the investigation as constituting an inadequate basis upon which to rest an indictment. Defendants claim that the grand jury's subpoena of bank records was irregular and any evidence obtained therefrom is illegal and ought to be suppressed, pursuant to Rule 41, Federal Rules of Criminal Procedure. They also make various other contentions concerning the propriety of the grand jury proceedings which the Court will discuss later.

 Initially, the Court must admit that it does not look with great favor upon this broad attack on the indictment and the grand jury proceedings. The Fifth Amendment only requires that an indictment be returned by a legally constituted and unbiased grand jury. Lawn v. United States, 355 U.S. 339, 349–350, 78 S.Ct. 311, 2 L.Ed.2d 321, 329–330 (1958). The case of United States v. Johnson, 419 F.2d 56 (4th Cir. 1969), rejects the idea that the use of illegal or hearsay evidence can vitiate an indictment. In fact, in that case, the court went on to explain that such contentions can only impede justice. Quoting from the Supreme Court, the court said at page 58:

. . . In Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), Mr. Justice Black wrote:

"If indictments were to be held open to challenge on the ground that there was inadequate or incom-

petent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

The court went on to say:

. . . *Costello* dealt with the indictment founded on hearsay evidence, but the rule it states is applicable to sustain an indictment returned by a grand jury that heard evidence obtained in violation of the Constitution. Of course, the tainted evidence would not be admissible in the trial of the case, but this presents no problem here. The count of the indictment that dealt with the speech was dismissed, and the speech played no part in the proof of the remaining counts.

■■■■ The Court has previously ruled that the subpoena was validly executed even though it was permitted to be satisfied by delivery of copies of documents to an F.B.I. agent instead of the records being personally delivered to the grand jury by a responsible officer of the bank. This Court has previously cited Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626, 643–644 (1972), in support of the position that the satisfaction of the subpoena is a matter for the court's supervision unless a constitutional, common law, or statutory privilege is involved. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972), dispels any notion that defendants can legitimately assert any privilege in the subpoenaed bank records. The subpoena was not improper or invalid. In re Horowitz, 482 F.2d

72 (2nd Cir. 1973). However, even if the Court were wrong on this score, the previous discussion in United States v. Johnson, *supra*, makes clear that the grand jury may consider the subpoenaed evidence, although it may in fact have been illegally obtained. Defendants' protection lies in a proper objection made at the trial.

The Court additionally rejects defendants' request for the suppression of any evidence, obtained as a result of the subpoenaed bank records, pursuant to Rule 41, Federal Rules of Criminal Procedure. The Court has previously determined that the records were legally obtained. Furthermore, such a request is premature since the government may well moot the question by issuing and having satisfied a subpoena of the records for the trial that obviates defendants' present objections.

■■■■ As noted previously, United States v. Johnson, *supra*, holds that hearsay may be used to obtain an indictment. Here defendants complain that the only evidence for the grand jury's consideration consisted of hearsay testimony of an F.B.I. agent. The Court does not know what witnesses appeared before the grand jury, or whether the subpoenaed bank records were used. It would seem, however, that to the extent that the bank records were used that this would mean the grand jury considered competent evidence, admissible at the trial. While the records would be hearsay evidence, the hearsay would be of a permissible variety.

■■■■ The Court also rejects defendants' contentions about the failure to record the grand jury proceeding. Their citation of United States v. Dennis, 384 U.S. 855, 86 S.Ct. 1840, 16 L. Ed.2d 973 (1966) is inapposite. In *Dennis*, the proceedings were recorded, and the harm to defendants was that the government had use of the transcript but defendants did not. In the instant case both the government and defendants stand on equal footing. This circuit does not require the recordation of

grand jury proceedings. United States v. Kind, 433 F.2d 339, 340 (4th Cir. 1970). *See* United States v. Aloisio, 440 F.2d 705 (7th Cir. 1971), for a compilation of authorities from other circuits following the rule.

Finally, the Court will deal with the remainder of defendants' attack on the grand jury proceedings. Defendants complain that they were denied their right to appear before the grand jury and that they are unable to discover who was present in the grand jury during deliberations. They want to know by what authority the foreman was elected, how he got to be foreman, and the vote of the grand jury. Defendants have stated no purpose for seeking this information, legitimate or otherwise.

 Certain matters appear on the record and as a result some of defendants' motions can only be categorized as frivolous at best. In open court, the grand jury was advised in defendants' presence that the grand jury could hear the defendants in their discretion. The grand jury declined to do so. Defendants have no absolute right to appear before the grand jury, especially when it is to read a self-serving statement. The Court fails to perceive how such a requirement could advance the interests of justice. Defendants will have ample opportunity to testify at the trial, where they can waive their Fifth Amendment privilege and permit the government to cross-examine them.

During the same open court proceeding, the Court had the clerk read the list of grand jurors present in order to ascertain who was present. The grand jury returned the indictments in proper form with the number of jurors concurring recorded on a separate piece of paper. The record of the vote has been locked up as required by Rule 6(c) of the Federal Rules of Criminal Procedure. During arraignment, defendants were supplied with a certified copy of the Court's original instructions to the grand jury. A transcript of those proceedings show the presiding judge appointed the foreman and deputy foreman of the grand jury in open court.

The Court fails to see what possible good faith basis defendants have in seeking to examine each and every action taken by the grand jury. These pre-trial attacks on the indictment with their requests to inspect all court and government material relating to the grand jury can only marginally advance the ends of justice while creating an "intolerable degree of interference with the public interest in having the guilty brought to book." United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510, 515 (1966). The Court denies defendants' motion to dismiss the indictment and their requests to examine all of the court's and the government's papers and documents which are not of public record.

IV

*Motion for Severance*

Certain defendants have moved for a severance of their trial on Count One which involves the conspiracy allegations. This motion is denied without prejudice so that the defendants may conduct discovery and then at a later date attempt to show the Court that they in fact have some valid reasons supporting their motion. It may well be that after they have had more time to prepare their case and consult with the government, defendants may not wish to pursue this motion.

It Is, Therefore, Ordered that each defendant's motion as to each and every particular be, and the same hereby is, denied. The motion for severance is denied without prejudice to its being raised again after defendants have completed their discovery, and in such time in advance of trial to permit the Court to give adequate consideration to it.