**UNITED STATES of America, Appellee,**

v.

**Allen CARR, Appellant.**

**No. 980, Docket 78–1053.**

United States Court of Appeals,
Second Circuit.

Argued May 23, 1978.

Decided Aug. 10, 1978.

---

Hal Meyerson, New York City, for appellant.

Shira A. Scheindlin, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty. for the Eastern District of New York, Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before OAKES, Circuit Judge, and BLUMENFELD * and MEHRTENS,** District Judges.

OAKES, Circuit Judge:

█ An individual walks into a bank and signs a loan application using a name, Social Security number and address not his own. He is prosecuted for knowingly making materially false statements in the application in violation of 18 U.S.C. §§ 1014[1] and 2.[2] The question presented is whether the Government must plead and prove either that the person named did not exist or that if he did exist he did not authorize the defendant to make the application. The United States District Court for the East-

ern District of New York, Jack B. Weinstein, *Judge,* permitted the case to go to the jury without such pleading or proof. While the jury was instructed that the Government was required to establish lack of authorization, it was also instructed that there was no evidence of a real person with the name used on the application or that any such person gave the defendant consent to procure the loan. The jury found him guilty, and from this judgment he appeals. We affirm.

Appellant Allen Carr, who was a co-owner with one Patrick Cain e of two businesses called Interline Receivers and R & D Receivers, on February 21, 1974, executed an installment loan application at a Bankers Trust Company branch in Brooklyn, New York. In the application he stated that his name was Robert Caime, that his home address was 172 Bay 34th Street, Brooklyn, which he rented for $175 per month, and that he was employed as head dispatcher at Interline Receivers, Inc. He signed the name "Robert Caime" following a statement on the face of the application which states that "the foregoing statements are true and correct" and are made to induce the bank to grant the loan. Subsequently, appellant endorsed the check for $3,336.50 payable to the order of Robert Caime in Robert Caime's name. He also made a number of payments on the loan, five of which were sent in envelopes hand-addressed by appellant with a return address name of Robert Cain e. An outstanding balance of $2,900 remains unpaid.

The Government first indicted appellant, Patrick Caine (the partner) and a Bankers

---

* Of the District of Connecticut, sitting by designation.

** Of the Southern District of Florida, sitting by designation.

1. It provides:

    Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of [specified banks and loan institutions], upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security

therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1014.

2. Section 2 states:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

Trust assistant manager for conspiracy and certain substantive offenses involving false statements made in connection with numerous loans. The indictment did not explicitly mention the Robert Caime loan. A bill of particulars furnished at appellant's request, however, did refer to the Caime loan application. The Government there indicated certain items which it then knew to be false—the applicant's place of employment and salary.[3] A superseding indictment filed after handwriting exemplars were taken from Carr charged specifically that he had represented that he was Robert Caime knowing that this was not Carr's real name.[4]

At trial the Government introduced evidence that appellant had signed the name Robert Caime to the application and had given a different address, Social Security number, and type of employment than his own. Most of this information was provided by an FBI agent who had interviewed appellant in November, 1975. No proof was presented by either party on whether Robert Caime was real or fictional or whether, if real, he had authorized Carr to sign his name. The court instructed the jury that the burden was on the Government to establish a lack of authorization, and then

added: "A fictional person cannot, of course, give consent. There's no evidence that there is a real Robert Caime, or that any such person gave this defendant consent."[5] All procedural rights were duly preserved and this appeal ensued.

■ Appellant's argument that the indictment should have been dismissed because, by not alleging that he used a fictional name or a real name without authority, it failed to state a crime, is entitled to only sort shrift. Where, as in this case, an indictment tracks the statutory language and specifies the nature of the criminal activity (here, the alleged false statements) it is sufficiently specific to withstand a motion to dismiss. *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976); *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir.), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975); *United States v. Kernodle*, 367 F.Supp. 844, 851–52 (M.D.N.C.1973), *aff'd*, 506 F.2d 1398 (4th Cir. 1974). The Government is not required to set forth evidentiary matter. *See United States v. Bernstein*, 533 F.2d 775, 786 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976).

■ Carr's principal contention is that a directed verdict should have been granted

---

**3.** Payroll records of R & D Receivers revealed that an "R. Caime," with a Social Security number different from that specified in the loan application, was employed by R & D Receivers. The records of Interline Receivers, the company used in the loan application, did not list a Robert or R. Caime.

**4.** It alleged:

On or about the 21st day of February, 1974, within the Eastern District of New York, the defendant Allen Carr did knowingly and wilfully make materially false statements in an application for a loan submitted by the defendant Allen Carr on the said date to Bankers Trust Company, 1545 Flatbush Avenue, Brooklyn, New York, the deposits of which were then and there insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of the said bank to approve a loan in the amount of Three Thousand Nine Hundred Sixty Dollars ($3,960.00) to one Robert Caime, in that the defendant Allen Carr represented in the said application that he was Robert Caime when, in truth and in fact, as the defendant Allen Carr well knew, his name was not Robert

Caime. (Title 18, United States Code, Section 1014 and Section 2).

**5.** The charge, in pertinent part, instructed:

A person may sign the name of another if he has authority from that person to do so, or is empowered to act for that person. No particular form of appointment is necessary. A writing is not required. If this defendant was given authority by one Robert Caime to sign his name, then he would be not guilty. He would not have to mention that authority.

The burden of proof is on the Government to prove that the signature is one made without actual, implied or empowered authority. A fictional person cannot, of course, give consent. There's no evidence that there is a real Robert Caime, or that any such person gave this defendant consent.

The mere filling out (s.i.c.) of your recollection, however, will govern. The mere filling of the body of the bank application is not a crime if he filled it out for somebody else so that that other person could sign.

November 23, 1977, Trial Transcript at 99–100.

because the Government failed to offer any evidence that Robert Caime was fictional or that he did not authorize the transaction.[6] He reasons that since authorization to sign another's name precludes criminal culpability, a necessary element of the offense must include lack of authorization.[7] And, the argument continues, under *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the burden is on the Government to establish this element, not on the defendant to disprove.[8] Appellant buttresses his position by referring to N.Y. Penal Law § 170.00(4) (McKinney 1975), relating to forgery, which apparently requires proof that the ostensible maker of the written instrument is fictitious or, if real, did not authorize the making. But this requirement is inherent in the statutory definition [9] which provides that:

> A person "falsely makes" a written instrument when he makes or draws a . . . written instrument . . . which purports to be an authentic creation of its ostensible maker or drawer, *but which is not such either because the ostensible maker or drawer is fictitious or because,*

*if real, he did not authorize the making or drawing thereof.*

*Id.* (emphasis added).

While the federal statute could have explicitly incorporated such a requirement, it does not. *See* note 1 *supra.* Significantly, neither party has produced a case in which it was held that an element of a Section 1014 crime is the defendant's lack of authorization. That the statute has never been so interpreted is doubtless due to the defendant's easier access to the underlying facts as well as the traditional notion that "it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could readily be disproved by the production of documents or other evidence probably within the defendant's possession or control." *Rossi v. United States*, 289 U.S. 89, 91–92, 53 S.Ct. 532, 533, 77 L.Ed. 1051 (1933) (defendant in prosecution for illegal operation of a still has burden of proving his registration as a distiller and his payment of bond). *See United States v. Rowlette*, 397 F.2d 475, 479–80

---

**6.** While our decision does not depend on the sufficiency of the Government's proof, we note that there was evidence from which the jury could have concluded that appellant was not authorized by anyone named Robert Caime to apply for the loan. Nothing in the loan application on file indicates that Carr was seeking the loan in a representative capacity. Had the bank been so advised, one would imagine that it would have required a power of attorney or other notation accompanying the loan papers. The jury also could have inferred that if Carr had been acting on another's behalf, he would not have held himself out to be Robert Caime. Additionally, the jury could have concluded both that appellant partially repaid the loan and that he was the ultimate recipient of the loan from the evidence that he addressed the envelopes containing the payments and endorsed the check issued to Robert Caime by the bank.

**7.** The defense relies on § 3–403(1) of the Uniform Commercial Code and Official Comment 3–403(3), which permit, in the case of certain negotiable instruments, the signature of one's name by an authorized representative. The UCC is of minimal relevance here, however, since the bank loan application was not negotiable. Additionally, the provision does not expressly authorize deceptive agency arrange-

ments whereby the signatory fails to reveal his true identity. In any event, assuming that authorization negates criminal culpability even where the fact of authorization is not revealed to the bank when the loan application is submitted, this does not suggest that nonauthorization is an element of the crime or that the Government has the burden of disproving authorization.

**8.** Appellant also urges that the Government's burden of proof on nonauthorization was impermissibly shifted to him by the Government's reliance throughout the trial on the assumption that Robert Caime was fictional and by the statement in the jury charge that there was no evidence of a real Robert Caime. *See* note 5 *supra.* Because we conclude that the Government was under no obligation to prove the nonexistence of Robert Caime, we need not consider whether the jury instructions actually imposed the burden of proving authorization on appellant.

**9.** Similarly, the statutory definition of unauthorized use of a vehicle, N.Y.Penal Law § 165.05 (McKinney 1975), includes lack of authorization as one of the elements of the crime.

(7th Cir. 1968) (defendant in drug sale case must show as affirmative defense that he falls within a statutory exemption).

We conclude, therefore, that lack of authorization is not an element of Section 1014. Thus, the Government was under no initial obligation to produce proof on this point, *see Patterson v. New York, supra,* 432 U.S. at 209–16, 97 S.Ct. 2319 (distinguishing *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)).

■ Here, the Government established the essential elements of the crime—the knowledgeable making of a false statement in a loan application for the purpose of influencing the action of the bank from which the loan is sought. *United States v. Sabatino,* 485 F.2d 540, 544 (2d Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *United States v. Kernodle, supra,* 367 F.Supp. at 851–52. The Government having done so, appellant then had the option of producing evidence in justification or excuse. *E. g., United States v. Licursi,* 525 F.2d 1164, 1168 (2d Cir. 1975) (burden on defendant to show inducement in entrapment defense). Had the defense of authorization been properly raised, the Government would have been required to prove lack of authorization beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368; *Wright v. Smith,* 569 F.2d 1188, 1191 (2d Cir. 1978) (assertion of an alibi does not affect burden of Government to prove guilt beyond a reasonable doubt); *United States v. Rosner,* 485 F.2d 1213, 1221–22 (2d Cir. 1973) (once defendant sustains burden of proving Government inducement in entrapment defense, the Government bears burden of proving predisposition, beyond a reasonable doubt), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). Because appellant chose not to assert this defense, the evidence was amply sufficient to permit jury consideration of the case.

Appellant lastly argues, as he did below, that the prosecution was guilty of "misconduct" because it requested a charge and argued in summation that there was no evidence of a Robert Caime when in fact it knew otherwise. Nothing in the record, however, supports this allegation. Carr emphasizes that the bill of particulars furnished after the first indictment did not state that Caime was fictitious. But at that time the Government did not know, and for all that appears still does not know, whether he exists. Appellant relies on a post-trial affidavit from a "John Caime" which states that he has a son named Robert who lived with the affiant until 1975 and worked at Interline Receivers or R & D Receivers. It further avers that an FBI agent [10] visited the affiant's home on several occasions. The affidavit does not suggest that the agent ever spoke to Robert Caime, or that John or anyone else ever told the agent of Robert's existence. It is thus useless for our purposes and was properly disregarded by the court below. There is absolutely no evidence of misconduct or impropriety on the part of the Government.

Judgment affirmed.

---

**10.** It is interesting to note that although the agent testified at appellant's trial, he was not cross-examined on whether he was aware of a Robert Caime.