UNITED STATES of America, Appellee,

v.

**Robert E. WEST, Appellant.**

**No. 806, Docket 80–1405.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1981.

Decided April 7, 1981.

Jerome F. O'Neill, Burlington, Vt. (William B. Gray, U. S. Atty., and Karen McAndrew, Asst. U. S. Atty., Burlington, Vt., on the brief), for appellee.

Frank G. Mahady, Norwich, Vt. (Mahady, Johnson, Dunne, Hershenson & Scott, Norwich, Vt., on the brief), for appellant.

Before KAUFMAN and TIMBERS, Circuit Judges, and WARD,* District Judge.

TIMBERS, Circuit Judge:

Appellant Robert West was convicted after a two day jury trial in the District of Vermont, Albert W. Coffrin, *District Judge*, on one count of knowingly making false statements to the Farmers Production Credit Association (FPCA) in South Burlington, Vermont, with the intention of influencing that organization, in violation of 18 U.S.C. § 1014 (1976); on one count of falsifying and concealing a material fact in a matter within the jurisdiction of the Farm Credit Administration, in violation of 18 U.S.C. § 1001 (1976); and on one count of using a document he knew to contain false statements in a matter before the Farm Credit Administration, in violation of 18 U.S.C. § 1001.

The gravamen of the offenses with which appellant was charged was that in 1975 he tendered to the FPCA a notarized mortgage deed, a promissory note and a loan

---

* Hon. Robert J. Ward, United States District Judge, Southern District of New York, sitting    by designation.

agreement which purported to bear the signature of Judith West, appellant's then wife, but on which appellant in fact had signed Mrs. West's name.

On appeal appellant claims that the district court erred (1) in refusing to charge the jury that the government was required to prove beyond a reasonable doubt that appellant lacked authority to sign Mrs. West's name on the document; and (2) in refusing to admit in evidence a divorce settlement agreement between appellant and Mrs. West.[1] Since we hold that appellant's claim of authorization constituted a valid affirmative defense which, once raised, the government was required to disprove beyond a reasonable doubt and that the district court erred in failing to instruct the jury on authorization, we reverse appellant's conviction on all counts and remand the case for a new trial.

## I.

Appellant and his wife owned real estate in Manchester, Vermont. They acquired it in 1969. The property included a "run down" old house. Between 1969 and 1972, appellant obtained a series of unsecured demand loans from the FPCA for repairs on the property. The loans were extended with the understanding that once appellant had made the repairs he would obtain long term financing from the Federal Land Bank or a commercial source. In 1975, after appellant was unable to obtain long term financing from another source, FPCA officials asked appellant to give the agency a mortgage on the property as security for a promissory note in the amount of the outstanding loan balance.

On October 28, 1975, appellant tendered to the FPCA a mortgage deed, two promissory notes and a loan agreement. The mortgage deed, the loan agreement and one of the promissory notes purported to be signed by appellant's wife, Judith. In fact, appellant himself had signed her name. At the time appellant signed his wife's name, Mr. and Mrs. West were living apart. They subsequently were divorced.

At the trial, appellant admitted that he had signed his wife's name on the documents in question. His sole defense was that Judith had authorized him to sign her name on financial documents, or alternatively, that he reasonably believed he was authorized to sign for her.

Appellant offered in evidence at the trial a stipulation of settlement signed by appellant and Judith on December 2, 1975 in connection with their divorce. Article VI of the agreement read: "Plaintiff [appellant herein] shall terminate his right to sign any obligations on behalf of defendant [Judith West] at any financial institution, or otherwise, with regard to any future obligation." In support of his offer, appellant urged that the stipulation was relevant to the question of whether he in fact was authorized to sign Judith's name on the documents in question. Indeed, the stipulation appears to have been the only evidence, except appellant's testimony, which was probative on the question of authority. The district court refused to admit the settlement agreement on the ground that it was hearsay and did not fall within any exception to the hearsay rule.

Appellant made a timely request, relying upon *United States v. Gilbreath*, 452 F.2d 992 (5 Cir. 1971), that the district court instruct the jury that, in order to convict appellant, the government was required to overcome a presumption that appellant was authorized to sign Mrs. West's name. In the alternative, appellant urged that, because he believed he was authorized to sign his wife's name, appellant had not "knowingly or wilfully" submitted false documents. The district court, however, did not mention "authorization" in its charge to the jury, either as an affirmative defense or as

---

1. Appellant also asserted in his brief that the district court erred in refusing to grant appellant's motion for a directed verdict of acquittal at the close of the government's case. At oral argument, however, this claim of error was withdrawn.

an element of the government's required proof.

## II.

The two provisions of the statute under which appellant was prosecuted prohibit knowingly making false statements, or using any false writing or document which contains a false statement, in any matter within the jurisdiction of any department or agency of the United States, 18 U.S.C. § 1001 (1976), and knowingly making any false statement for the purpose of influencing any of the specified government owned or insured financial institutions which grant loans to homeowners and farmers, 18 U.S.C. § 1014 (1976).

Under either provision of the statute, a defendant may be convicted of making a false statement only if the government proves beyond a reasonable doubt that the defendant either knew the statement was false, *United States v. Marchisio*, 344 F.2d 653, 666 (2 Cir. 1965) (§ 1001); *United States v. Erskine*, 588 F.2d 721, 722 (9 Cir. 1978) (§ 1014), or acted with a conscious purpose to avoid learning the truth. *United States v. Egenberg*, 441 F.2d 441, 444 (2 Cir.), *cert. denied*, 404 U.S. 994 (1971) (§ 1001); *United States v. Hanlon*, 548 F.2d 1096, 1101 (2 Cir. 1977) (§ 1014).

In a prosecution under § 1014 charging the submission of a false signature, the prosecution is not required to prove lack of authorization as part of its prima facie case. *United States v. Carr*, 582 F.2d 242, 245–46 (2 Cir. 1978). While no court appears to have ruled expressly whether lack of authorization is an element of § 1001, we hold that the government does not bear the initial burden of proving lack of authority under § 1001 any more than under § 1014. As we indicated in *United States v. Carr, supra*, that element is not explicitly incorporated in the statute and its exclusion from the government's initial required proof is consistent with our traditional reluctance to require the government "to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could readily be disproved by the production of documents or other evidence probably within the defendant's possession or control." *Id.* at 245, *quoting Rossi v. United States*, 289 U.S. 89, 91–92 (1933).

Appellant's assertion, however, that he was authorized, or reasonably believed that he was authorized, to sign his wife's name on the documents he submitted to the FPCA did constitute an affirmative defense which tended to negate the government's charge that he "knowingly" submitted false documents. *United States v. Carr, supra*, 582 F.2d at 246; *see United States v. Cleary*, 565 F.2d 43, 46 (2 Cir. 1977), *cert. denied*, 435 U.S. 915 (1978). This is so because if appellant reasonably believed that he was authorized by Mrs. West to place her signature on financial documents and that the signature would bind Mrs. West to the obligations under the mortgage, the loan agreement and the promissory notes, then appellant did not have the specific intent to submit false documents necessary to constitute a violation of either § 1001 or § 1014. *See United States v. Lewis*, 592 F.2d 1282, 1286 (5 Cir. 1979) (in forgery prosecution under 18 U.S.C. § 495, good faith is a complete defense to charge involving intent to defraud).

Once appellant produced some evidence of such authority, the burden was on the government of proving beyond a reasonable doubt that appellant lacked authorization in order to sustain its burden of proving that appellant had the requisite intent. *United States v. Carr, supra*, 583 F.2d at 246; *cf. In re Winship*, 397 U.S. 358, 361–64 (1970); *United States v. Swiderski*, 539 F.2d 854, 857 (2 Cir. 1976) (once defendant produces evidence of entrapment, burden shifts to the government to prove predisposition beyond a reasonable doubt); *United States v. Currier*, 405 F.2d 1039, 1042 (2 Cir.), *cert. denied*, 395 U.S. 914 (1969) (once defendant produces "some evidence" of insanity, the

government must prove sanity beyond a reasonable doubt).

The district court's instructions to the jury did not mention the authorization question, either as a defense or in the context of the court's explanation of the requirement of knowledge. While the court correctly did instruct the jury that it should not convict appellant if it found that he submitted false documents "because of accident, mistake or other innocent reason", that language was insufficient to inform the jury adequately regarding appellant's defense and the government's burden of proof.[2]

Since appellant satisfied the requirement that he raise the issue of authority, the court should have informed the jury that the government had the burden of proving lack of authority beyond a reasonable doubt. *See United States v. Berger*, 433 F.2d 680, 684 (2 Cir. 1970), *cert. denied*, 401 U.S. 962 (1971) (entrapment defense); *Issac v. United States*, 284 F.2d 168, 170 (D.C.Cir. 1960) (insanity defense). Appellant was entitled to have a properly instructed jury consider his defense that he was authorized to sign Judith's name to the documents in question. Since the jury was not so instructed, we reverse the judgment of conviction on all counts and remand the case for a new trial.

### III.

In view of our holding above that appellant is entitled to a new trial because of the inadequacy of the jury instructions,

we need not dwell at length on appellant's evidentiary claim of error. We do hold, however, that the stipulation of settlement, executed less than two months after the events which gave rise to this indictment, was admissible as non-hearsay evidence to show appellant's state of mind, i.e., that he believed that he had authority to sign Judith's name to financial documents. *United States v. Bobo*, 586 F.2d 355, 371 (5 Cir. 1978), *cert. denied*, 440 U.S. 976 (1979); *United States v. Wilkes*, 451 F.2d 938 (2 Cir. 1971); *see* Weinstein and Berger, 4 Weinstein's Evidence ¶ 801(c)[01] (1979).

As indicated above, appellant's state of mind, including his reasonable belief that he had authority, was relevant to the question of whether he "knowingly" submitted false documents. The fact that soon after he signed the documents which are the subject of the criminal prosecution appellant entered into an agreement purportedly terminating his authority to sign Judith's name is relevant to the question of whether, at the time he signed the documents here involved, he believed that he was authorized. *See Edwards and Hanley v. Wells Fargo Secur. Clearance Corp.*, 458 F.Supp. 1110, 1118, n.2 (S.D.N.Y.1978), *rev'd on other grounds*, 602 F.2d 478 (2 Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980). The stipulation of settlement, if offered, would be admissible as non-hearsay evidence, not to prove the truth of the matter asserted, but to show what appellant believed.

If we had not reversed appellant's conviction and remanded for a new trial because

---

**2.** With respect to the "knowingly" and "wilfully" requirements of § 1001, the court instructed the jury:

"The second element that must be proven by the Government beyond a reasonable doubt is that the defendant acted knowingly and wilfully. An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. Intent is the purpose or aim or state of mind with which a person acts. An act is done 'wilfully' if done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say

with bad purpose either to disobey or disregard the law."

With respect to the corresponding requirements of § 1014, the court instructed the jury:

"The fourth and final element of the offense charged in Count 1 which the Government must prove beyond a reasonable doubt is that the defendant knowingly made a false statement or report. An act is done 'knowingly' if done voluntarily and intentionally, and not because of a mistake or accident or other innocent reason. The word 'knowingly' is added to insure that no one would be convicted who made a statement or report which

of the inadequate jury instructions, we would be reluctant to reverse on this ground alone, for it does not appear that appellant made it clear at the trial that he was offering the stipulation of settlement for the purpose stated above. *Huff v. White Motor Corp.*, 609 F.2d 286, 290 n.2 (7 Cir. 1979). What we have said here is for the guidance of the court and counsel at the new trial on remand.[3]

Appellant's conviction is reversed and the case is remanded for a new trial consistent with this opinion.

Reversed and remanded.

was false because of mistake, accident or other innocent reason."

3. We also agree with the district court that the stipulation of settlement might have been admitted during Judith West's testimony as evi-

dence of a prior inconsistent statement. F.R.E. 613(b). Appellant, however, failed to lay the proper foundation for its admission on this ground at trial.