**UNITED STATES of America**

v.

**Elias MAALOUF and Ghassan Maalouf, Defendants.**

**No. 80 CR 217(S)**

United States District Court, E. D. New York.

April 28, 1981.

852

Edward R. Korman, U. S. Atty., E.D. of New York by Ruth A. Nordenbrook, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Richard E. Leavitt, New York City, for defendant Elias Maalouf.

Spanakos & Spanakos by William M. Spanakos, Brooklyn, N. Y., for defendant Ghassan Maalouf.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Indictment 80 CR 217(S) charges defendant Elias and Ghassan Maalouf in 16 counts with violations of various federal laws arising out of the allegedly illegal use of MasterCharge and VISA credit cards. The case is before the Court on defendants' motion to dismiss the indictment. For the reasons which follow, the motion is denied.

In an introductory section, the indictment recites that defendants, as officers of various corporations, opened merchant's credit card accounts at four banks in Brooklyn, New York, "for the purpose of exchanging, for money, credit card sales drafts reflecting sales" by the named corporations. It is further alleged that the deposits of the four banks are insured by the Federal Deposit Insurance Corporation ("FDIC").

Counts 1–7 charge defendants with violations of 15 U.S.C. § 1644(a) and allege, in the language of the statute, that they

.  "did knowingly and willfully, in transactions affecting interstate commerce, conspire together to use lost, stolen and fraudulently obtained MasterCharge and Bank Americard/VISA credit cards . . . to obtain money in an amount in excess of $1,000.00 for each card . . . ."

Count 8 charges defendants under 18 U.S.C. § 371 with

"conspiring to make false statements and to overvalue property for the purpose of influencing the action of banks insured by the Federal Deposit Insurance Corporation upon the purchase of Bank Americard/VISA and MasterCharge sales debts and upon a commitment by the banks to pay on Bank Americard/VISA and MasterCharge sales drafts"

in violation of 18 U.S.C. § 1014. This count, as well as setting forth in detail five overt acts in furtherance of the conspiracy, alleges that defendants presented "false and fraudulent" credit card sales invoices for deposit to the accounts at the four banks. In addition, defendants are alleged to have withdrawn substantial sums of money from these accounts. Counts 9–16 each allege a substantive violation of 18 U.S.C. §§ 1014 and 2 in the making of false statements in connection with the deposit to one of the banks of credit card sales invoices that defendants knew did not represent bona fide sales made by their corporations.

■ Initially, defendants move to dismiss the entire indictment on the ground that the Grand Jury was presented with evidence that one of their corporations entered into an agreement with Citibank when in fact, defendants assert, the agreement was with a "non-banking" subsidiary of Citicorp not insured by the FDIC. Even if such evidence had in fact been put before the Grand Jury, at this stage of the proceedings it would be wholly speculative to say that it was in any sense materially inaccurate. In all events, since the indictment tracks the statutory language and clearly specifies the nature of the alleged criminal activity, it is sufficient on its face to withstand a motion to dismiss, *United States v. Carr*, 582 F.2d 242, 244 (2d Cir. 1978), and "thus the Fifth Amendment does not require that we look behind it to consider the character of the evidence upon which it is based." *United States v. Schlesinger*, 598 F.2d 722, 726 (2d Cir. 1979). See *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

■ In addition, defendants move to dismiss counts 1–7

"because there is no evidence available to show that any of the individual credit cards named in those Counts were used in any separate corporate credit card accounts maintained by the defendants to obtain money in an aggregate amount in excess of $1,000.00 in a one year period, as required by § 1644(a)." Motion at 2.

This contention is clearly without merit. Because the indictment tracks the language of 15 U.S.C. § 1644(a) and is valid on its face, *Costello v. United States, supra*, it is beyond doubt that the "Government is not required to set forth evidentiary matter." See *United States v. Carr, supra*. See also *United States v. Bernstein*, 533 F.2d 775, 786 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). Precisely

how the government will seek to prove its legally sufficient allegations is a question whose resolution must await trial.

Defendants concentrate their fire most heavily on counts 8–16, basing their motion to dismiss these charges brought under the bank fraud statute on a restrictive interpretation of that enactment. Section 1014 of Title 18, U.S.C. states in relevant part:

"Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase agreement, repurchase agreement, commitment, or loan . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

■ Defendants contend that § 1014 was intended to apply solely to false statements made in connection with the *lending* functions of the banking institutions protected by the statute. Moreover, they argue that the enactment of 15 U.S.C. § 1644(a) preempted 18 U.S.C. § 1014 as the exclusive vehicle for prosecution of credit card fraud. However, in the light of the legislative history of § 1644 and a consistent body of case law, this Court is unable to accept these arguments.

The courts have repeatedly rejected restrictive constructions of § 1014, deeming it designed to protect against a broad variety of schemes that may influence a bank "in any way." In *United States v. Payne*, 602 F.2d 1215, 1219 (5th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980), the court concluded that 18 U.S.C. § 1014 reached a "check kiting" scheme that was unrelated to the lending activities of the defrauded bank ("the intent of Congress was to incorporate in one codal section all of the business transactions of any of the specified agencies"). See *United States v. Norberg*, 612 F.2d 1 (1st Cir. 1979); *Kovens v. United States*, 338 F.2d 611, 618 (5th Cir. 1964). Construing the term "commitment" in the statute, the

Court of Appeals for the 10th Circuit concluded:

"We believe that Congress had [the] common and accepted meaning in mind when it used the word. We find no intent to confine 'commitment' to a promise to make a loan. The purpose of § 1014 was to cover all undertakings which might subject the FDIC insured bank to risk of loss." *United States v. Stoddart*, 574 F.2d 1050, 1053 (10th Cir. 1978).

Accord, *United States v. Tokoph*, 514 F.2d 597, 602 (10th Cir. 1975).

In *United States v. Green*, 494 F.2d 820 (5th Cir.), *cert. denied*, 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974), appellants claimed that their convictions under the federal mail fraud statute, 18 U.S.C. § 1341, upon proof of a fraudulent credit card scheme were invalid because 15 U.S.C. § 1644 was the exclusive tool for the prosecution of such offenses. In rejecting that contention, the court concluded:

"The sparse legislative history of section 1644 provides no indication that the amendment was intended to be the sole vehicle for prosecution of credit card frauds. It appears to us that section 1644 was intended to ensure and expand the Government's capacity to deal with fraudulent credit card schemes; and we can find no intimation that Congress intended to restrict the use of existing prosecutorial tools or that it believed that a new tool was being created. . . .

"[S]ection 1644 does not purport to be the exclusive vehicle for the federal prosecution of fraudulent credit card schemes . . . ." 494 F.2d at 826–27.

■ In the light of the authorities taking an expansive view of 18 U.S.C. § 1014, and in the absence of any indication in the legislative history of 15 U.S.C. § 1644 that it was intended to preempt the former statute, this Court must be guided by the principle that statutory repeals by implication are disfavored by the law. See *United States v. Burroughs*, 289 U.S. 159, 53 S.Ct. 574, 77 L.Ed. 1096 (1933); *United States v. Rollnick*, 91 F.2d 911 (2d Cir. 1937). The Court concludes that the enactment of 15 U.S.C.

§ 1644 does not bar the prosecution of defendants for credit card fraud under 18 U.S.C. § 1014.

■ Finally, defendants contend that the credit card sales invoices they allegedly deposited in the FDIC-insured banks were not "statements" that could be true or false within the intendment of § 1014. From the face of the indictment, however, and by the government's response to this motion, it is clear that it is not alleged that the invoices themselves were "statements" made by defendants. Rather, it is apparent that the government seeks to prove at a trial that false statements were made when credit card sales invoices were presented for deposit to the bank accounts of defendants' corporations.

> "in that the defendant represented that the aforesaid sales draft reflected a genuine debt arising from a bona fide sale of goods to the above mentioned cardholder in [a stated amount in each count] when the defendant knew that this representation was false in that no such bona fide sale occurred.
>
> (Title 18, United States Code, Sections 1014 and 2)." Indictment, counts 9–16.

Upon consideration of the authorities discussed above, the Court is of opinion that this allegation states an offense under § 1014 that the government must be permitted an opportunity to prove at trial.

It appears that the prosecution will explore at trial the contractual relationship between defendants' corporations and the banks with regard to the establishment and maintenance of the several merchant's credit card accounts. If this relation gave rise to express or implied warranties with respect to the genuineness of the credit card invoices deposited, such warranties would be evidence for the jury's consideration of "the legal equivalent of a representation or statement as to the value" of the invoices. *United States v. Payne, supra,* 602 F.2d at 1218.

■ Finally, the indictment does not fail to state an offense, as defendants argue, merely because the agreements opening the merchant's credit card accounts may have been entered into with non-banking subsidiaries on behalf of the FDIC-insured banks. Section 1014 itself does not require that the false statements be made *directly to* an FDIC-insured bank, and by its terms a violation exists whenever a person "knowingly makes any false statement . . . for the purpose of *influencing in any way* the action of" a protected bank (emphasis supplied). The courts have consistently construed this language as descriptive of the requisite intent and have expressly rejected assertions that the statute requires that the bank must actually rely upon the misrepresentations or even that the bank must be aware of the false statements. *United States v. Johnson,* 585 F.2d 119, 124 (5th Cir. 1978) ("The focus is on the defendant's intent rather than on the victim"). *United States v. Cleary,* 565 F.2d 43, 46 (2d Cir. 1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1469, 55 L.Ed.2d 506 (1978) ("The essence of the crime was the making of false statements with intent to influence the Bank, and whether or not the Bank was actually induced to rely upon them is irrelevant"). Accord, *United States v. Tokoph, supra; United States v. Kernodle,* 367 F.Supp. 844, 851–52 (M.D.N.C.1973), *aff'd,* 506 F.2d 1398 (4th Cir. 1974).

Indeed, in this case it is alleged that the series of deposits was knowingly made directly to the banks, notwithstanding the existence of legal entities that may have acted for the banks in some capacities. See *United States v. Sabatino,* 485 F.2d 540 (2d Cir. 1973). Moreover, if it developed at trial that defendants made oral representations to bank employees in the course of the deposits of the invoices or their subsequent withdrawals of cash from the accounts, such representations could also be considered as evidence of "statements" within the purview of 18 U.S.C. § 1014. See *United States v. Sackett,* 598 F.2d 739, 741–42 (2d Cir. 1979); *United States v. Stoddart, supra.* In sum, the Court is of opinion that the government is entitled to show at a trial that because of defendants' course of conduct and the relation of their corporations to the banks, the presentation of the

856

allegedly fraudulent credit card invoices were false statements criminalized by 18 U.S.C. § 1014.

Accordingly, the motion to dismiss the indictment is denied.

SO ORDERED.