**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard D. WILCOX,**
**Defendant–Appellant.**

No. 89–50315.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1990.

Decided Nov. 20, 1990.

Stephen A. Munkelt, Nevada City, Cal., for defendant-appellant.

Jon C. Cederberg, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING *, District Judge.

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

LEAVY, Circuit Judge:

## OVERVIEW

Defendant Richard D. Wilcox (Wilcox) was convicted of conspiracy to make false statements to a federally insured savings and loan in violation of 18 U.S.C. § 371 (1988) and of three counts of making false statements to a federally insured savings and loan in violation of 18 U.S.C. § 1014 (1988). Wilcox contends the district court erred by denying his motion to present a "good faith" defense to the charges of making the false statements, and by refusing his proposed jury instructions.

We affirm.

## FACTS

In 1982, Wilcox, an attorney, and three other individuals, Robert Scharer (Scharer), a general contractor, David Perry, M.D., and John Hensley, a real estate broker, formed a company called Sierra Gold, Inc. to develop recreational property adjacent to Scotts Flat Lake in Nevada County, California. The project was known as Harmony Cove.

Harmony Cove was financed by a $3.8 million loan from Camino Real Savings and Loan Association (Camino Real S & L) of San Fernando, California. Camino Real S & L was insured by the Federal Savings and Loan Insurance Corporation. The loan was secured by the 93–acre parcel of land that comprised Harmony Cove.

To ensure the loan proceeds would be used only to develop Harmony Cove, Camino Real S & L did not advance the entire loan to Wilcox and Scharer. Instead, a voucher system was used whereby Wilcox or Scharer had to execute preprinted vouchers warranting that certain work was actually performed to receive reimbursement from the savings and loan. Each voucher stated:

The undersigned represents and warrants that this disbursement represents direct payment for labor and/or materials and/or reimbursement for bills previously paid to persons furnishing labor and/or materials hereto for use in or related to construction on [the Harmony Cove project].

Some vouchers Wilcox and Scharer submitted to Camino Real S & L contained copies of checks or invoices purporting to prove that they had expended money on Harmony Cove. A representative of Camino Real S & L testified that he believed that the work identified in the vouchers had actually been done at Harmony Cove and that therefore, he had authorized payments from the loan in the amounts requested. However, the evidence at trial established that the work was either not done at all or was connected to entirely separate projects, and that Wilcox and Scharer made false statements to Camino Real S & L in connection with their requests for reimbursement on the Harmony Cove project.

False statements to a federally insured savings and loan are a violation of 18 U.S.C. § 1014, which states in relevant part:

Whoever knowingly makes any false statement ... for the purpose of influencing in any way the action of ... any institution ... insured by the Federal Savings and Loan Insurance Corporation ... upon any ... loan, ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

## DISCUSSION

*Exclusion of The Good Faith Defense*

Wilcox states: "[t]he sole issue presented on this appeal is the exclusion of evidence, instructions, and argument on good faith as a defense to the charges."

Wilcox argued in his trial memorandum that he was entitled to a defense of good faith because the vouchers, even if false, were submitted according to the instructions of the savings and loan, and therefore, he could not have had the requisite intent to act illegally or improperly. Wilcox also wanted to show his state of mind; that is, that he had no intent to defraud. At the beginning of the trial, however, the government moved in limine to prevent the defendants from introducing evidence that

anyone at Camino Real S & L had represented to the defendants that it was appropriate to make false statements in connection with the Harmony Cove loan. The district court granted the motion. It did so on the basis of our holding in *United States v. Kennedy*, 564 F.2d 1329, 1340–41 (9th Cir.1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978), where we stated:

> [T]his appellant was charged ... with making a false statement ... to a federally-insured bank as interdicted by 18 U.S.C. § 1014. The gravity of this offense is the making of false statements calculated to *influence* the action of the bank. [The defendant] posits that since the bank officer to whom the statement was tendered had determined in advance to authorize the loan, his false statement could not be said to have influenced the action of the bank. However, [sic] intriguing this argument may be, it has been and must be rejected as being a *non sequitur*. The phrase "for the purpose of influencing" is intended to define the quality of the requisite intent, not to immunize a defendant from criminal liability merely because the bank officer was a party to the scheme. The United States Supreme Court, while speaking in the context of a different statute, forty years' [sic] ago rejected the argument that proof that the lending agency was actually influenced was an essential ingredient of conviction for making a false statement with intent to influence.
>
> From the language of 18 U.S.C. § 1014 and the teaching of the cases, we hold that the essence of the offense in the making of the false statement with the intent to influence the lender is not dependent on the accomplishment of that purpose. It is a crime of subjective intent requiring neither reliance by the bank officers nor an actual defrauding.

(Citations omitted.)

■■ The availability of the good faith defense to a particular charge is a question of law reviewed de novo. *See United States v. Scott*, 789 F.2d 795, 797 (9th Cir.1986) (denial of good faith defense to crime of selling government property).

Wilcox argues that *Kennedy* is not controlling on the issue of the intent that must be demonstrated to violate 18 U.S.C. § 1014:

> At no time in his discussions with bank officials did Appellant Wilcox indicate a desire to obtain illegitimate or improper proceeds, or a desire to use proceeds of the loan for improper or illegitimate purposes. At no time during the discussions did any bank officer suggest that their advice on how to handle loan documentation was an invitation to illegal or improper conduct. At no time did the bank officials indicate that Mr. Wilcox's desires amounted to illegal or illegitimate use of loan proceeds.
>
> Based on these circumstances, when appellant submitted the vouchers involved in ... the indictment, he relied entirely on the bank officials' advice on the proper means of submitting documentation. *Although he knew some of the documentation submitted was false, he also knew that the bank officials were advised of the true circumstances* ....
>
> In other words, appellant acted entirely in good faith reliance on the specific advice and authorization of bank officials when preparing the vouchers.... *He did not intend for any false statement to influence the bank. The issue presented here is not whether bank officials' knowledge of falsity affects appellant's criminal liability, but whether appellant's good faith reliance on the advice of bank officials is a defense to the specific intent requirement of 18 U.S.C. § 1014.*

(Emphasis added.)

■■ The issue is whether a defendant who knowingly falsifies a statement to a bank, yet claims it was done in good faith reliance on instructions from a bank, is entitled to a good faith defense.

*Kennedy* comes close to deciding the issue. However, because the argument was different, *Kennedy* did not decide precisely

what intent must be shown when a person admits to knowingly making false statements in reliance on bank officials' advice.[1] Nevertheless, the principle of *Kennedy* holds true in this case: the *only* intent that needs to be shown is the intent to influence. Just as "the offense in the making of the false statement with the intent to influence the lender is not dependent on the accomplishment of that purpose," *Kennedy*, 564 F.2d at 1341, so the offense is not dependent on the motive of the person making the false statements.

The reason is in the statute itself. Although Wilcox argues that the requisite intent must include a bad purpose of some sort, a common sense reading of the statute suggests that he is wrong. Section 1014 prohibits knowingly making false statements for the purpose of influencing any action on a loan by a federally insured savings and loan. The requisite intent is the intent to influence an action, and nothing more. There is no indication that making false statements for any purpose—be it good, bad, or indifferent—is allowed. *Cf. Scott*, 789 F.2d at 798 (interpreting statute to preclude bad faith intent).

We hold, therefore, that making a false statement to a federally insured savings and loan with the intent to influence is prohibited, regardless of motive.[2] This holding squares with the language of the statute and with the holding of *Kennedy* that no actual influencing need be demonstrated. Here, the submission of the false

vouchers was designed to influence the disbursement of funds by the savings and loan. The filing of the documents was a prerequisite to the financial institution's payments of the defendant's claims. In fact, under the procedures adopted by Camino Real, the payments could not have been made unless the defendant made the false representations at issue. That defendant may have been encouraged in this scheme, or even joined in it, by one or more bank officials affords him no defense at all.

Two cases from other circuits have allowed a good faith defense to an alleged violation of 18 U.S.C. § 1014, but they are distinguishable from the case before us. The Second Circuit held there is such a defense where the evidence showed a defendant reasonably believed he had the authority to use his wife's name on financial documents and thus did not have the specific intent to submit false documents necessary for a violation of 18 U.S.C. § 1014. *United States v. West*, 666 F.2d 16, 19 (2d Cir.1981).[3]

In the other case, the defendant did not inform General Motors Corporation and others, in his application for a car dealership, of the legally enforceable gambling debts he had incurred. *United States v. Ribaste*, 905 F.2d 1140 (8th Cir.1990). At trial, his defense was a good faith belief that debts of this type were not legally enforceable in the State of Missouri. *Id.* at 1141. The Second Circuit noted that there was considerable evidence casting doubt on

1. A careful reading of *Kennedy* limits its holding to whether there must be actual influence, reliance, or accomplishment of a bad purpose. This focuses on the ultimate purpose of the false statement rather than on the intent of the person seeking to accomplish that purpose.

2. We note that Wilcox obtained substantial funds from Camino Real S & L by providing it with falsified vouchers. There is no doubt that he influenced the savings and loan, regardless of his motive.

3. The district court in *West* refused to admit into evidence a divorce settlement agreement between the appellant and his wife, and refused to instruct the jury that the government was required to prove beyond a reasonable doubt that the appellant lacked authority to sign his

wife's name. 666 F.2d at 18. The Second Circuit stated: "[a]ppellant's assertion ... that he was authorized, or reasonably believed that he was authorized, to sign his wife's name on the documents he submitted ... constitute[d] an affirmative defense which tended to negate the government's charge that he 'knowingly' submitted false documents." *Id.* at 19. The Second Circuit held that, for a conviction under section 1014, the government must prove beyond a reasonable doubt that the defendant knew the statement was false. *Id.* It also held that the "appellant's state of mind, including his reasonable belief that he had authority, was relevant to the question of whether he 'knowingly' submitted false documents." *Id.* at 20.

the appellant's asserted belief, *id.* n. 2, but the issue on appeal was not the good faith defense, which was allowed, but the content of the jury instructions on the defense. *Id.* at 1142.

Both *West* and *Ribaste* are distinguishable from the case before the panel. Their focus is on whether false statements were made "knowingly," a required element under 18 U.S.C. § 1014. Here, Wilcox admits he made the false statements knowingly. His claim is that he did so with no bad motive since he relied on the bank's directions.

*The Jury Instructions*

Wilcox argues the district court erred by refusing to instruct the jury that to violate 18 U.S.C. § 1014, the government must show "the defendant had the specific intent to do something the law forbids when making a false statement; that is to accomplish an unlawful or improper purpose." Wilcox contends the court's refusal to give this instruction prohibited his presentation of a defense of good faith.

█ Failure to give an instruction on the defendant's theory of the case is reversible only if the theory is legally sound and evidence in the case makes it applicable. *Scott*, 789 F.2d at 797. Because we hold that motive is irrelevant to the intent to influence when a false statement is made knowingly, Wilcox's theory is not legally sound. The district court did not err by refusing to give this instruction.

AFFIRMED.