UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael I. BLUMENTHAL,
Defendant–Appellant.

No. 90–10137.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 18, 1991.

Decided Sept. 20, 1991.

Robert Fabrikant, McKenna, Conner & Cuneo, Washington, D.C., for defendant-appellant.

Joel R. Levin, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before GOODWIN and SNEED, Circuit Judges, and TAYLOR *, District Judge.

TAYLOR, District Judge:

We are asked to hold that intent to deceive is a necessary element in the crime of making false statements to a federally insured institution (18 U.S.C. § 1014 (1988)). We hold the intent that must be shown is intent to influence, and intent to deceive is not an element of the offense. Therefore, we affirm.

## I. BACKGROUND

Defendant Michael I. Blumenthal was convicted on seven counts of making false statements to a federally insured savings and loan, in violation of 18 U.S.C. § 1014. He contends it was error not to instruct the jury that a specific intent to deceive is necessary to establish a violation of this statute. He also appeals several evidentiary issues.

Blumenthal is a real estate developer in the San Francisco area. In 1984 he obtained a 4.1 million dollar construction loan from World Savings and Loan Association ("World") to finance partial construction of the Ridgecrest Townhomes Project in Castro Valley, California. Disbursal of funds from the largest component of the loan, a two million dollar construction fund, was conditioned on Blumenthal providing a "Construction Progress Payment Request" ("CPR") each month.

Blumenthal submitted nine CPR's, and does not dispute that they consistently inflated or misstated the progress of the construction. He admitted altering the

CPR's by overstating the amount submitted by the construction company performing the work, without that construction company's knowledge. He testified that he had the oral consent of a World officer, Ted Richmond, to inflate the CPR's to conform to S & L requirements for disbursement. Blumenthal also provided evidence which, he argued, proved Richmond must have disbursed the funds with full knowledge of the inflated CPR's. Blumenthal further claimed his evidence proved that this was not an unusual practice. Richmond denied any knowledge that the CPR's were inflated.

False statements to a federally insured savings and loan are a violation of 18 U.S.C. § 1014. That statute provides:

> Whoever knowingly makes any false statement ... for the purpose of influencing in any way the action of ... any institution ... insured by the Federal Savings and Loan Insurance Corporation ... upon any ... loan, ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

The jury instructions given stated the elements as follows:

> First, [that the bank was insured by FSLIC]; Second, that [the defendant] knowingly made a false statement to [World]; Third, [the defendant] did so with the intent of influencing the actions of [World] in regard to the loan transaction; Fourth, that the false statement was material to the loan transaction.

Blumenthal requested further jury instructions, which were refused. Summarized, they stated the jury could not find Blumenthal had the requisite criminal intent under the statute if the evidence showed reasonable doubt whether the agreements permitted Blumenthal to recover costs and overhead beyond actual construction costs, or if the evidence showed Blumenthal had a good faith belief that the agreement permitted Blumenthal to submit inflated CPR's.

---

* Honorable Gary L. Taylor, U.S. District Judge, Central District of California, sitting by designation.

The instruction that was given directed the jury to convict unless they found that:

> [E]vidence in this case leaves you with a reasonable doubt whether Michael Blumenthal in good faith believed the [CPR's] to be true; or whether, believing the requests to be false, he also believed in good faith that the requests did not have the capacity to influence the bank's decisions or activities....
>
> If each element of the offense has been proven beyond a reasonable doubt, and it is a fact that a bank officer or employee knew of or condoned a false statement made with the required criminal intent, that fact is not a defense to the charge.

## II. DISCUSSION

Blumenthal claims error in not instructing the jury that an intent to deceive is essential to the charge. He also raises various evidentiary objections.

### 1. *The intent required under the Statute.*

■ Blumenthal's main argument on appeal is that, in order to obtain a conviction under section 1014, the government must prove, *inter alia*, that a defendant who knowingly makes a false statement to a federally insured bank acted with "intent to deceive." He argues that the jury instructions given were fatally flawed because they omitted that essential element.[1]

Blumenthal states this interpretation of the statute is mandated by language of the Supreme Court in *Kay v. United States*, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938). The petitioner in *Kay* had argued her conviction under 12 U.S.C. § 1467 (a predecessor statute of 18 U.S.C. § 1014) should be reversed, as the statements she had made did not have the capacity to influence the Home Owners Loan Corporation. In wording upon which Blumenthal relies, the Court stated "[t]here can be no

question that Congress was entitled to require that the information be given in good faith and not falsely with intent to mislead." *Kay*, 303 U.S. at 6, 58 S.Ct. at 471. However, before that passage, the Court stated, "[i]t does not lie with one knowingly making false statements with intent to mislead the officials [of the bank] to say that the statements were not influential or the information not important." *Id.* at 5–6, 58 S.Ct. at 470–71. The Court's statement relied on by Blumenthal appears to be qualified by the passage preceding it.

Blumenthal's argument is foreclosed by several decisions of this court, beginning with *United States v. Kennedy*, 564 F.2d 1329 (9th Cir.1977). In *Kennedy*, this Court examined a conviction under section 1014 and stated:

> [defendant] posits that since the bank officer to whom the statement was tendered had determined in advance to authorize the loan, his false statement could not be said to have influenced the action of the bank. However intriguing this argument may be, it has been and must be rejected as being a *non sequitur*. The phrase "for the purpose of influencing" is intended to define the quality of the requisite intent, not to immunize a defendant from criminal liability merely because the bank officer was a party to the scheme.

*Id.* at 1340.

In *Kennedy*, this court concluded that *Kay* supported the argument that proof the leading institution was actually influenced was irrelevant. *Kennedy*, 564 F.2d at 1340 (citing *Kay v. United States*, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938)).

More recently, in *United States v. Wilcox*, 919 F.2d 109 (9th Cir.1990), this Court addressed as argument substantially the same as the one made by Blumenthal. In *Wilcox* the defendants were convicted for, among other offenses, submitting false loan statements to a savings and loan. De-

---

1. Defendant's offered instructions did not directly raise the "intent to deceive" theory, but spoke instead of a "good faith belief" in an agreement with the bank to submit false statements. Defendant's *pro se* opening brief also framed the argument in terms of "good faith," rather than "intent to deceive." It was only in Defendant's reply brief, when represented by counsel, that he put the argument in terms of "intent to deceive."

fendant Wilcox claimed he was entitled to a defense of good faith because the vouchers, even if false, were submitted according to the instructions of the savings and loan. *Id.* at 110. The defendant argued the district court erred in excluding evidence showing the banks officers' knowledge, and in not giving a jury instruction that "the government must show the defendant had the specific intent to do something the law forbids when making a false statement ...." *Id.* at 110–11, 113. This, Wilcox argued, was plain error since his good faith reliance on the advice of bank officials was a defense to the specific intent requirement of the statute. *Id.* at 111.

This Court rejected these contentions. While we noted *Kennedy* did not decide what intent must be shown when a person knowingly makes false statements to a bank officer in reliance on that bank official's advice, we held in *Wilcox* that "the *only* intent that needs to be shown is the intent to influence." *Id.* at 112 (original emphasis). The submission of the false vouchers by Wilcox was designed to influence the disbursement of funds by the Savings and Loan. The motive behind the statement was irrelevant, as was the bank officer's knowledge. *Id.*

Blumenthal attempts to distinguish *Wilcox* because it was concerned with a good faith defense, rather than the "intent" necessary under the statute. This is circular: Wilcox's proposed good faith defense was that he could not have had the requisite intent. The evidence that Wilcox sought to introduce was collusion by the bank officer. Similarly, Blumenthal's rejected jury instructions dealt with claimed collusion by the bank officers and the assertion that defendant therefore could not have had the requisite criminal intent. The issue is the same.

Blumenthal argues that his interpretation is supported by language in *United States v. Smith*, 891 F.2d 703 (9th Cir.1989) implying intent to deceive is necessary: "[Defendant] argues that he could not have had the intent to deceive when he knew that the Savings and Loan was aware of the true facts. But this is an argument for

the jury. His intent to deceive was before that body. The jury by its verdict found that he possessed the requisite intent." *Id.* at 713. Blumenthal contends this statement shows the issue of intent to deceive must be before the jury. However, it is apparent from the context the "intent to deceive" discussed in *Smith* is the equivalent of the intent to influence that *Wilcox* holds is the statute's required intent. *Compare Smith*, 891 F.2d at 713 with *Wilcox*, 919 F.2d at 111–12. This is borne out by the jury instruction given in *Smith:* [the jury must find] "that the defendants made the false statements with the specific intent to influence, in any way, the action of the [Savings and Loan]." *Smith*, 891 F.2d at 709. A specific intent to deceive is not mentioned.

Blumenthal contends the district court's failure to give an instruction on his theory of the case is reversible error under *United States v. Scott*, 789 F.2d 795 (9th Cir.1986). Although failure to give an instruction on a defendant's theory is reversible error if the theory is legally sound and applicable, here the theory is not legally sound, and refusal to give this instruction was not error.

### 2. *The evidence objections.*

Blumenthal raises three claims of evidentiary error, which are without merit.

█ He argues the district court abused its discretion in admitting "character evidence" to impeach his motives. However, what the defendant describes as "character evidence" was produced during cross examination of his billing methods on the CPR's and other items related to the loans—matters raised by Blumenthal's own testimony on direct examination. The district court properly overruled the defense objections to this line of questioning. While defendant cites *United States v. Wood*, 550 F.2d 435, 441 (9th Cir.1977), for the proposition that F.R.Evid. 608(b) prohibits the introduction of specific instances of a witness's conduct to attack credibility, that was not the purpose of the evidence. There was no error.

Blumenthal argues the defense should have been permitted to put in evidence the

declaration of the original owner of the property, or allowed adequate time to find this owner. He claims the owner's testimony would have impeached prosecution witness Richmond's credibility. However, the defense never offered the declaration in evidence. After a hearsay objection, the declaration was correctly excluded from use in impeaching Richmond. The defense did not request more time to find the witness. There was no error.

Finally, Blumenthal argues evidence of World's motives for condoning factually incorrect CPR's should have been admissable. The admissibility of this kind of motive evidence was ruled out by our decision in *Wilcox*, holding that such evidence is irrelevant under the statute. *Wilcox*, 919 F.2d at 112. It was not error to exclude this evidence.

### III. DISPOSITION

For the reasons stated above, we AFFIRM.