62 F.3d 1411
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
H. Raymond KELLETT, Jr., Defendant, Appellant.
 No. 94-1920.
 United States Court of Appeals,
First Circuit.
 July 31, 1995.
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Edward F. Harrington, U.S. District Judge]
 H. Raymond Kellett, Jr. on brief pro se.
 Donald K. Stern, United States Attorney, Deborah M. Smith, Director, New England Bank Fraud Task Force, and Donald C. Lockhart, Trial Attorney, New England Bank Fraud Task Force, Fraud Section, Criminal Division, U.S. Department of Justice, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 H. Raymond Kellett appeals from the summary denial of his motion for a new trial and his motion for reconsideration. We affirm.
 
 
 2
 Kellett was a closing attorney for a federally insured bank, ComFed Savings Bank. In 1990, he was indicted for making false statements to ComFed in violation of 18 U.S.C. Sec. 1014 and for obstructing justice. His trial ended in a hung jury. Thereafter, a superceding indictment was returned. Kellett then pled guilty to one count of making a false statement to the bank and to one count of obstructing justice. He was sentenced, served his term of imprisonment, and is now serving a term of supervised release. After bringing two petitions for post-conviction relief, Kellett brought the motion now before us. In a margin order, the district court denied the motion; it also summarily denied subsequent motions to amend and to reconsider the court's decision.
 
 
 3
 Kellett's motion sought to invalidate his guilty plea. According to the motion, Kellett had recently obtained exculpatory evidence which the prosecution had had in its possession, but had failed to produce during discovery. If the withheld evidence had been produced, Kellett's trial allegedly would likely have ended in acquittal and he would not have pled guilty. In support of his motion, Kellett submitted his own affidavit and affidavits and a statement by his trial attorney. Kellett asked for a hearing on his claims and a new trial. For reasons which follow, we affirm.[2]
 
 
 4
 Because Kellett was never tried after his reindictment, we construe his motion for a new trial as a motion for post-conviction relief under 28 U.S.C. Sec. 2255. See United States v. Collins, 898 F.2d 103, 104 (9th Cir.1990) (per curiam) (a defendant who pleads guilty may not bring a motion for a new trial under Fed. R. Crim. P. 33). For argument's sake, we assume that Kellett may challenge his guilty plea on the ground that the prosecution failed to disclose exculpatory evidence. See Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir.1995) (a defendant challenging the voluntariness of a guilty plea may assert a Brady claim); United States v. Wright, 43 F.3d 491, 496 (10th Cir.1994) (under limited circumstances, a Brady violation can render a defendant's plea involuntary); White v. United States, 858 F.2d 416, 422 (8th Cir.1988) (Supreme Court precedent did not foreclose a Brady challenge to a guilty plea), cert. denied, 489 U.S. 1029 (1989); Campbell v. Marshall, 769 F.2d 314, 321 (6th Cir.1985) (similar), cert. denied, 475 U.S. 1048 (1986); but see Smith v. United States, 876 F.2d 655, 657 (8th Cir.) (in pleading guilty, a defendant waives all nonjurisdictional challenges to the prosecution, including a claim based on the prosecution's failure to disclose favorable evidence), cert. denied, 493 U.S. 869 (1989). The relevant question, then, is whether the withheld information was material to Kellett's defense. The test of materiality in evaluating a challenge to a guilty plea based on the withholding of exculpatory evidence is whether there is a "reasonable probability" that a defendant would have refused to plead and would have gone to trial but for the prosecution's withholding of the evidence. See Sanchez, 50 F.3d at 1454; accord Wright, 43 F.3d at 496 (evidence is material only if there is a reasonable probability that its disclosure would have altered the result of the proceeding in question); compare White, 858 F.2d at 424 (rejecting Brady challenge to defendant's Alford plea because the withheld evidence would not have been "controlling" in defendant's decision to plead guilty); Campbell, 769 F.2d at 324 (same). The test of materiality is an objective one. Sanchez, 50 F.3d at 1454.
 
 
 5
 Viewed objectively, there is no question that the withheld evidence was not material to Kellett's determination to plead guilty. Here, Kellett essentially pled guilty to knowingly making a false statement to ComFed in order to influence the bank's action upon a loan application. See 18 U.S.C. Sec. 1014. The government's charge against him was that he had knowingly signed loan documents falsely representing that there was no secondary financing on the property being mortgaged. The withheld evidence consisted, first, of notes by Frank Buco, a co-defendant and former ComFed Executive Vice- President who pled guilty to making false statements to ComFed and who testified for the prosecution at Kellett's trial; and, second, of a transcript of two telephone conversations between James Baldini, a former President and director of ComFed, and a person identified only by first name in the transcript. The Buco notes are far from self-explanatory, consisting in large part of incomplete sentences and phrases, unexplained bank jargon, and references to unidentified persons and events. Without further background explanation, we cannot see the precise significance of Buco's notes. They refer to Kellett once, but the import of the reference is unclear.[3] They suggest, as Kellett argues, that Jack Zoeller, a ComFed director and President, knew that second mortgages were being concealed. If so, the notes indicate that Buco had information which could have impeached Zoeller at trial, who allegedly denied any involvement in the "No Doc" loan program.[4] The notes may also suggest, as Kellett claims, that bank directors had willfully ignored information that loan applications with hidden second mortgages were being submitted to the bank, and that Baldini had been involved in establishing the program. The discussions recorded in the Baldini transcript involved loan transactions involving "bogus buyers." Neither Baldini nor the person he spoke with referred to Kellett or to loans involving hidden second mortgages. At one point, Baldini expressed his dislike of fraud, adding vaguely that he "got set up by a Board of Directors at Comfed to take a fall that the US Attorney has cleared me of." His statement does not support Kellett's claim that the transcript shows that Baldini, Zoeller and ComFed's directors knew about and participated in the No Doc loan program.
 
 
 6
 Thus, the withheld evidence contains nothing that even hints at Kellett's innocence. For argument's sake, we assume that it clearly showed that senior bank officers and directors, including Baldini and Zoeller, had approved the No Doc loan program and that they continued to promote the program after becoming aware that loan applications concealing second mortgages were being submitted to the bank. As a matter of law, however, that evidence would not exonerate Kellett. The case law is clear that the complicity of a bank or of bank officers is not a defense in a section 1014 prosecution.[5] See, e.g., United States v. Blumenthal, 945 F.2d 280, 282-83 (9th Cir.1991) (affirming the lower court's refusal to give jury instructions on the bank officers' collusion with the defendant; the instructions did not advance a "legally sound" theory); United States v. Wilcox, 919 F.2d 109, 112 (9th Cir.1990) (affirming the exclusion of evidence that bank officers had told defendant that he could make the false statements in question); United States v. Bush, 599 F.2d 72, 75 (5th Cir.1979) (affirming the lower court's refusal to instruct the jury that the defendant's false statements could not have been made to influence the bank because the bank's president knew the statements were false; Sec. 1014 does not "immunize a party in duplicity with a bank officer"); United States v. Johnson, 585 F.2d 119, 123-25 (5th Cir.1978) (affirming the exclusion of evidence about bank officers' complicity; the bank's awareness of the fraud is not relevant since its existence is not inconsistent with the defendant's possessing the requisite intent to influence); United States v. Brennan, 832 F. Supp. 435, 448 (D.Mass.1991) (Sec. 1014 focuses on a defendant's intent to influence the bank by making false statements, not on whether the bank was actually influenced; thus, "it was of no consequence whether or not a bank official knew th[e] statements were false when submitted"), aff'd, 994 F.2d 918 (1st Cir.1993).[6]
 
 
 7
 Viewed objectively, therefore, the withheld evidence would not have supported a viable defense and so it was not material (except for the very limited use it might have been for impeachment purposes). See Sanchez, 50 F.3d at 1454 (the withheld evidence was not material to the defendant's decision to plead guilty because one of the defenses it allegedly supported was not viable and the other would "almost certainly fail" at trial). Although Kellett avers that he would not have pled guilty if the withheld evidence had been produced, he would have had no objective legal basis for that decision, and so we have no basis for overturning his guilty plea.
 
 
 8
 We also reject Kellett's argument that he has steadfastly maintained his innocence and that he did not know that the loan documents sent to him by the bank contained false statements. In order to obtain a conviction under section 1014, the prosecution must show that the defendant made false statements knowingly. See 18 U.S.C. Sec. 1014 (imposing liability on those who "knowingly" make false statements to a federally insured bank); United States v. Grissom, 44 F.3d 1507, 1510 (10th Cir.), cert. denied, 115 S. Ct. 1720 (1995). In his plea agreement, Kellett agreed to plead guilty to making false statements to ComFed in violation of section 1014.[7] At his plea hearing, Kellett confirmed that he had informed his attorney of the circumstances of the charge against him; he also confirmed that his attorney had advised him of the nature of those charges and his possible defenses. He then pled guilty to violating section 1014 after the court had advised him that doing so would waive his right to be presumed innocent. He did not object to the government's description of its case against him.[8] Moreover, Kellett's attorney stated that he did not know of any reason why the court should not accept the plea. The court accepted Kellett's plea as "voluntarily and knowledgeably offered." The court further found that there was an independent basis of fact for accepting Kellett's plea because of what he had heard at Kellett's trial on the first indictment. Under the circumstances, Kellett cannot claim now that he did not knowingly plead guilty, and cannot now protest that he was innocent all along. It is inconceivable that Kellett's attorney would have recommended a guilty plea, or that Kellett, an attorney, would have pled guilty, if Kellett had not known that the loan documents he signed contained false statements. We have no basis for relieving Kellett of the consequences of his informed and voluntary decision to plead guilty.[9]
 
 
 9
 On appeal, Kellett also argues that the trial court initiated plea discussions with him in chambers in violation of Fed. R. Crim. P. 11(e). We do not address that claim since it was not squarely raised below. See United States v. Ocasio- Rivera, 991 F.2d 1, 3 (1st Cir.1993). Kellett suggests as well that the court should have recused itself. Because he failed to file a motion below seeking the court's disqualification or recusal, that claim is not before us on appeal. See United States v. Towns, 913 F.2d 434, 443 (7th Cir.1990); United States v. De La Fuente, 548 F.2d 528, 541 (5th Cir.), cert. denied, 431 U.S. 932 (1977).
 
 
 10
 Because Kellett's claim that his guilty plea should be overturned was meritless, no hearing was required.
 
 
 11
 Affirmed.
 
 
 
 [2]
 Because this appeal is so clearly meritless and rendering a decision on the merits would not alter the result reached below, we agree with the government that we may bypass the jurisdictional questions it raises in its appellate brief. See FDIC v. Bay Street Development Corp., 32 F.3d 636, 639 n.4 (1st Cir.1994). In view of our disposition, we also decline to consider other issues raised by the government in its thorough brief, e.g., whether Kellett's motion should be denied as an abuse of the writ
 
 
 [3]
 The paragraph containing the reference to Kellett reads:
 Accusations are made by Fred Maloof about scheme. Ray Kellett, abused, Addullah, Ambiehl. Kick Backs, etc. NO DOC Program stopped 3/89 reluctantly by Zoeller. I urged him many times to kill program, not loan officers. He did it his way.
 
 
 [4]
 Apparently, the bank had implemented a loan program whereby it would approve loan applications without obtaining documents verifying a borrower's assets. It is our understanding that it was the failure to require asset verification that permitted Kellett and others to prepare documents falsely representing that there were no second mortgages on the properties in question
 
 
 [5]
 The government correctly notes that we have previously denied Kellett's contention that the bank's complicity exculpates him under section 1014. See H. Raymond Kellett v. United States, No. 93-1843, at 2-4 (1st Cir. Apr. 6, 1994). In that appeal, the Buco notes and Baldini transcript were not in the record, although Kellett's reply brief in that case referred to them
 
 
 [6]
 Kellett's argument concerning the bank's complicity may be based on the premise that any false statements he made could not have been intended to influence the bank to approve the loans since the bank itself had initiated the No Doc program and continued it knowing that false loan applications were being submitted. See United States v. Grissom, 44 F3d 1507, 1510 (10th Cir.) (a requisite element of a section 1014 prosecution is that the defendant has made false statements to a bank for the purpose of influencing the bank), cert. denied, 115 S. Ct. 1720 (1995). If so, his premise would seem wrong as a matter of common sense. The bank apparently would not have approved the loan applications if they had disclosed the existence of secondary financing. Because Kellett was willing to close on documents he knew contained false representations, the bank was able to approve the loans
 
 
 [7]
 The page in the superceding indictment against Kellett which describes Count 25, the count to which Kellett pled guilty, is missing. The original indictment, however, explicitly charged Kellett with "knowingly" making false statements to ComFed; presumably, the superceding indictment did as well
 
 
 [8]
 The prosecutor stated that she had been prepared to prove the following at trial: that Kellett had participated in a scheme to conceal second mortgages from the underwriting department at the bank; that, in connection with one specific loan application, Kellett had prepared or caused to be prepared a HUD-1 settlement statement, a HUD-1 certificate, and a Fannie Mae affidavit, all of which falsely represented that no second mortgage on the property in question existed; that Kellett had signed those documents, thereby vouching for their veracity; that the bank had granted a mortgage on the basis of those documents; that the mortgage violated the bank's underwriting guidelines and the mortgagor subsequently defaulted; and that ComFed was a federally insured bank
 
 
 [9]
 In view of his plea hearing and sentencing hearing transcripts, we discount entirely Kellett's claim that he had only accepted responsibility on behalf of his office. It is true that his presentence investigation report records his comment that he accepted responsibility for his subordinates' conduct. At sentencing, the government asked the court to deny Kellett a two-level reduction in his base offense level because of Kellett's equivocal acceptance of responsibility; it maintained that Kellett was "trying to ... walk a thin line so as to preserve his bar membership." In any event, in response to questioning by the court, Kellett unequivocally agreed that he accepted responsibility for the two counts of the indictment to which he had pled guilty