139 F.3d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elcie WINSTON, Jr., Defendant-Appellant.
 No. 97-50276.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 2, 1998.**
Decided Feb. 5, 1998.
 
 Appeal from the United States District Court for the Central District of California. Richard A. Paez, District Judge, Presiding.
 Before: PREGERSON, BEEZER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Elcie Winston, Jr. appeals his jury conviction and sentence for one count of making false statements to a federally insured lending institution, in violation of 18 U.S.C. § 1014, and five counts of mail fraud, in violation of 18 U.S.C. § 1341. We affirm Winston's conviction and sentence.
 
 
 3
 * Winston contends that the district court abused its discretion in admitting, pursuant to Fed.R.Evid. 404(b), evidence that he had unsuccessfully applied for two loans from Bank of America before he applied for loans from Coast Federal Bank and Community West Mortgage. We disagree.
 
 
 4
 The prior act evidence was admitted for a proper purpose under Rule 404(b).[1] The fact that Winston had applied and been turned down for loans from Bank of America gave a full and complete picture of the crimes charged and tended the prove the material elements of knowledge, intent, and motive with respect to the 18 U.S.C. §§ 1014 and 1341 charges. See, e.g., United States v. Paguio, 114 F.3d 928, 931 (9th Cir.1997). Because some of the charged misrepresentations on the Coast and Community West loan applications also appeared on the Bank of America loan applications, the prior act evidence was also probative of the absence of mistake. See United States v. Jenkins, 785 F.2d 1387, 1395 (9th Cir.1986).
 
 
 5
 The fact that the loan applications were submitted to different banks does not lessen the probative value of the prior act evidence, nor does the period of months that elapsed between the Bank of America applications and the Coast and Community West applications render the prior acts too remote in time. See United States v. DeSalvo, 41 F.3d 505, 509-10 (9th Cir.1994); United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990). Indeed, the fact that Winston's Coast application followed directly on the heels of Bank of America's second loan denial, yet omitted mention of Winston's half-million-dollar construction contract liability, is precisely what renders the prior act evidence so probative of Winston's knowledge, intent, and motivation.
 
 
 6
 Finally, we hold that the district court did not abuse its discretion in concluding that possible prejudice from the prior act evidence, particularly in terms of making it look as though Winston was desperate for financing, did not outweigh its probative value. See United States v. Parker, 549 F.2d 1217, 1222 (9th Cir.1977) ("[E]vidence relevant to a defendant's motive 'is not rendered inadmissible because it is of a highly prejudicial nature.... The best evidence often is.' ") (quoting United States v. Mahler, 452 F.2d 547, 548 (9th Cir.1971)).
 
 II
 
 7
 Winston also argues that the district court erred in refusing to instruct the jury on a good faith defense to the charged offenses. The issue is whether the court's instruction on specific intent to influence Coast's actions and to defraud Community West rendered the proposed good faith defense instruction superfluous. We hold that the proposed instruction was superfluous and that the district court did not err in rejecting it.
 
 
 8
 The failure to give an instruction on a good faith defense "is not fatal so long as the court clearly instructed the jury as to the necessity of proof of 'specific intent' as an element of the crime." United States v. Sarno, 73 F.3d 1470, 1487 (9th Cir.1995) (quoting United States v. Solomon, 825 F.2d 1292, 1297 (9th Cir.1987)) (under § 1014); United States v. Dees, 34 F.3d 838, 842 (9th Cir.1994) (under § 1341).
 
 
 9
 The requisite intent under § 1014 is the intent to influence the lending institution's actions, see United States v. Wilcox, 919 F.2d 109, 112 (9th Cir.1990), and the jury charge properly instructed the jurors that they had to find that Winston "intended the [false] statement to influence the action of the institution on an application" before they could convict him of the § 1014 offense. Similarly, the requisite intent under § 1341 is intent to defraud, and the district court's instructions properly required the jury to find such intent before it could convict Winston of the § 1341 offense. The district court's instruction on intent to defraud "more than adequately reflect[ed] the definition of intent to defraud ... under [§ 1341]." Dees, 34 F.3d at 842; see also id. at 842 n. 1 (quoting jury instruction).
 
 III
 
 10
 Finally, Winston contends that the district court erred in adding a seven-level enhancement to Winston's offense level based on an alleged $164,737.96 loss suffered by Coast Federal Bank. Section 2F1.1 of the Sentencing Guidelines governs offense level calculations for fraud crimes, and the parties do not dispute that this section properly governed the calculation of Winston's offense level.
 
 
 11
 Under § 2F1.1, a defendant convicted of a fraud crime starts with a base offense level of six. U.S.S.G. § 2F1.1(a). This offense level is increased incrementally as the loss attributable to the fraud increases. § 2F1.1(b). Application Note 7(b) addresses how loss should be calculated in fraudulent loan application cases:
 
 
 12
 In fraudulent loan application cases ..., the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan.
 
 
 13
 § 2F1.1 comment. (n.7(b)). In light of potential difficulties in calculating loss, the district court "need only make a reasonable estimate of the loss, given the available information." § 2F1.1 comment. (n.8).
 
 
 14
 Actual loss "is a measure of what the victims of the fraud were actually relieved of," or the net loss to the lending institution. United States v. Harper, 32 F.3d 1387, 1391 (9th Cir.1994). The district court correctly calculated Coast's actual loss in determining Winston's offense level under § 2F1.1(b). The court subtracted $175,000, the price at which Coast was able to resell the Virginia Road property, from $339,737.96, the outstanding balance on the loan at the time Winston's fraud was discovered. The resulting loss to Coast, $164,737.96, required a seven-level enhancement pursuant to § 2F1.1(b)(1)(H).[2]
 
 
 15
 Winston contends that the Virginia Road property had an "appraised value" of $348,777.67 at the time he conveyed the property to Coast and that he should not have been held responsible under § 2F1.1(b) for the decline in the value of the property between conveyance and sale, which he attributes to Coast's mismanagement. The Guidelines, however, do not invite, or even allow, a district court to delve into complex questions of proximate cause in determining a lending institution's actual loss for purposes of calculating a defendant's offense level under § 2F1.1(b).[3]
 
 
 16
 Rather, any sentencing disproportionality that results from using the actual loss figure is handled on a more general and far simpler basis under the Guidelines. Application Note 7 provides: "In some cases, the loss determined above may significantly understate or overstate the seriousness of the defendant's conduct.... In such a case ... an upward or downward departure may be warranted." § 2F1.1 comment. (n.7(b)); see also § 2F1.1 comment. (n.10). Winston's concerns are thus handled in the fixing of the final offense level, rather than in the § 2F1.1(b) loss calculation.
 
 
 17
 In this case, the district court determined that no sentencing disproportionality existed and exercised its discretion not to make a downward departure. The decision not to depart is not reviewable by this court. See United States v. Webster, 108 F.3d 1156, 1158-59 (9th Cir.1997).
 
 
 18
 AFFIRMED.
 
 
 
 **
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 To be admissible under Rule 404(b), evidence of prior acts must: (1) prove a material element of the crime currently charged; (2) show similarity between the past and charged conduct; (3) be based on sufficient evidence; and (4) not be too remote in time. See United States v. Hinton, 31 F.3d 817, 822 (9th Cir.1994)
 
 
 [2]
 The district court properly applied a preponderance of the evidence standard in determining the amount of Coast's loss. See United States v. Barnes, 125 F.3d 1287, 1290 (9th Cir.1997); United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc)
 
 
 [3]
 The failure to consider proximate cause in the § 2F1.1(b) analysis does not create a perverse incentive for lending institutions to maximize their losses by refusing to seek the highest price for pledged collateral. The rules that govern the calculation of a defendant's offense level under § 2F1.1(b) are unrelated to those that govern the calculation of the restitution, if any, to which a victim is entitled. See United States v. Catherine, 55 F.3d 1462, 1464-65 (9th Cir.1995) (noting the different methods of calculating loss under, and the different purposes behind, the rules governing offense level and restitution calculations)